**People of the State of Illinois, Plaintiff-Appellee, v. Junior Savage, Defendant-Appellant.**

### Gen. No. 68–37.

Second District.
November 27, 1968.

John T. Beynon, Public Defender, of Rockford, John F. McNamara and Vern L. Davitt, Assistant Public Defenders, for appellant.

William R. Nash, State's Attorney of Winnebago County, of Rockford, and Daniel D. Doyle, Assistant State's Attorney, for appellee.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant, Junior Savage, was tried on a murder charge before the court without a jury. This appeal is from the defendant's conviction for murder by the Circuit Court of Winnebago County. Defendant has been sentenced by the court to serve a term of not less than

thirty nor more than fifty years in the Illinois State Penitentiary.

The evidence discloses that at approximately 12:30 a. m. on October 27, 1966, defendant, a fifty-year-old man, voluntarily walked into the Headquarters of the Winnebago County Sheriff with his hands raised above his head and without question or comment by anyone stated, "I done it; I done it; arrest me; arrest me." One of the Deputy Sheriffs asked him what he had done. He replied, "I killed my wife." The Deputy asked, "What did you kill her with?" He answered, "With an axe, that's all I had." Without further questioning, several Deputy Sheriffs took him to his home where they conducted an on-the-scene investigation not involving interrogation of the defendant.

Upon entering, they found the body of a woman, severely lacerated about the head and neck lying on the living room floor. There was an axe lying near the body and also a broken kitchen knife.

The testimony of one of the deputies present was that he thereupon informed defendant that he had the right to remain silent, that anything he said could be used against him and that he need not make a statement without a lawyer present. One of the other deputies present stated that defendant had also been informed that counsel would be appointed if he was indigent. No questioning took place at this time. The Sheriff's deputies and the defendant returned to the Sheriff's office. Defendant was then and there fully advised as to his constitutional rights and was given the name and telephone number of the Public Defender and advised that he had the right to call the Public Defender and have him present. Defendant then made an oral statement admitting that as a result of an argument with his wife, he had hit her with the axe, killing her; that he then went to the kitchen, secured a kitchen knife and tried to take his own

life by falling on the knife; that the knife broke, and he then went to the Sheriff's office.

Prior to being tried for murder, defendant had a sanity hearing before a jury and was found sane.

At the trial for murder which began on May 1, 1967, a defense psychiatrist testified that he had examined the defendant on February 15, 1967, and found him to be suffering from a long-term brain damage, which prevented him, at the time of the offense, from understanding the nature of his act. In rebuttal, the People called a psychiatrist who testified he had examined and tested the defendant in the County Jail on seven separate occasions between February 23 and March 17, 1967, and found no evidence that defendant was mentally defective, mentally ill, had brain damage nor was suffering from brain damage at the time of the offense; and in his opinion, defendant understood the nature of his acts.

Prior to trial defendant had served the People with a subpoena duces tecum calling for the production of statements of the defendant and also statements taken from any witnesses who were going to testify. The trial judge granted the State's motion to quash the subpoena, with the qualification that if any of the State's witnesses were to testify from records, those records would first be made available to defendant.

On this appeal defendant contends: (a) he was not adequately advised of his constitutional rights; (b) that the court erred in granting the motion to quash his subpoena and (c) that finding defendant guilty of murder in view of the psychiatric testimony was against the manifest weight of the evidence.

▉ Defendant contends that the statement made by him when he walked voluntarily into the Sheriff's office was inadmissible because he was not first informed of the warnings required in some circumstances by Miranda v. Arizona, 384 US 436, 16 L Ed2d 694, 86 S Ct 1602. The statement made by the defendant is a classic illus-

480

tration of what has been termed a "threshold confession." Defendant came voluntarily into the Sheriff's office and before the Sheriff's police were even aware a crime had been committed, he made his statement that he had killed his wife with an axe. In the Miranda case the court stated (16 L Ed2d 694, 726):

". . . Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

The testimony as to the statement was in our opinion properly admitted.

█ After this voluntary statement was made at the Sheriff's office, the Sheriff's deputies took the defendant to his home, the scene of the crime. There they investigated but did not subject defendant to any questioning. He was advised of his rights at that time, although the evidence is unclear as to whether he was then advised that if he was indigent an attorney would be appointed to defend him. Again, before any questioning or interrogation was started, he was returned to the Sheriff's office where he was fully advised of his rights and was, in fact, given the name of the Public Defender. At this point, he stated that he wished to tell his story and to get it off his chest and made a detailed statement of the occurrence and the events leading up to it. Having been

481

fully advised of his rights prior to making this statement, it was proper to admit it into evidence.

The second contention of the defendant is that the court erred in quashing his subpoena duces tecum, which purported to require the production of police reports in advance of trial. The People's motion to quash this subpoena was granted by the court with the provision that defendant would have access during the trial to reports bearing upon testimony of any prosecution witness prior to cross-examination. This ruling is squarely in line with Illinois cases which consistently hold that the defense is entitled to examine police reports only for impeachment purposes after the pertinent witness has actually testified at the trial. People v. Ostrand, 35 Ill 2d 520, 531, 221 NE2d 499; People v. Turner, 29 Ill2d 379, 383, 194 NE2d 349; People v. Wolff, 19 Ill2d 318, 323, 167 NE2d 197; People v. Hall, 83 Ill App2d 402, 410, 227 NE2d 773.

Defendant's final contention is that the defense raised at trial the question of the mental capacity of the defendant to control his impulses or to understand the nature of the act he had committed. Defendant claims that this defense was not rebutted by the State, and, that the only evidence was the testimony of Dr. J. G. Graybill. The defendant in this argument ignores the fact that the State called Dr. Carl Hamann as a rebuttal witness and that he testified that the defendant, Junior Savage, was sane at the time of committing the offense. Defendant also ignores the fact that prior to trial there was a full sanity hearing.

The factual situation before us is similar to one that existed in People v. Lemay, 35 Ill2d 208, 220 NE2d 184. In that case Dr. Graybill had testified that defendant did not know what he was doing at the instant of the shooting. A psychiatrist called by the People in rebuttal testified that the defendant was sane and had no symptoms

of brain damage and understood the nature of his act. The Court said at p 211:

> "Defendant argues that once evidence of insanity is introduced the ordinary presumption of sanity does not prevail and the burden devolves on the State to prove that at the time of committing the act, the accused was legally sane. (Citation omitted.) We agree with this concept of the burden of proof. However, we feel that the present record raises a factual question for the jury on the issue of defendant's sanity at the time of the occurrence.

> "Dr. Graybill's hypothesis of momentary insanity was based on many factors including an assumption of brain damage, a borderline normal electroencephalogram, and an inflammatory statement allegedly made by the deceased. Dr. Stephan, while he did not affirmatively state that defendant was sane at the time of the occurrence, raised a question of fact as to the validity of Dr. Graybill's opinion, and defendant's prior claim of an accidental shooting effectively rebuts the assumption of the deceased's alleged inflammatory remark. In addition the jury could consider the physical facts relating to the shooting. We believe the jury was justified in determining that the State had satisfied the burden of proof on the issue of sanity."

In the case at bar, we believe that the State satisfied the burden of proof on the sanity issue.

We cannot hold that the verdict of the jury is contrary to the manifest weight of the evidence. We are of the opinion that the judgment of the court below should be affirmed.

Judgment affirmed.

MORAN and DAVIS, JJ., concur.