[No. 423-1.    Division One—Panel 2.    February 22, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. PETER A. RATOW, *Appellant.*

*Dan P. Danilov,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael DiJulio, Deputy,* for respondent.

JAMES, J.—On December 30, 1967, Peter A. Ratow shot and killed his former wife. For this homicide he was found guilty of murder in the first degree. Immediately after shooting his former wife, Ratow shot and killed another. For this homicide he was found guilty of murder in the second degree.

Ratow's only defense is insanity. For reasons herein discussed, the trial did not take place until January, 1970.

The principal assignment of error concerns the admissibility of testimony of the arresting officers concerning statements made by Ratow after he had been taken into custody. After a CrR 101.20W hearing, the trial judge ruled that the statements were admissible.

The officers testified that Ratow was arrested at the scene of the homicides. He was immediately advised of his constitutional rights, searched, handcuffed, and seated in the police car. One officer sat with him while others investigated the homicides.

The officer who sat with Ratow was a recent recruit to the police force. He testified that because he was somewhat unsure of himself, he carefully refrained from asking Ratow any questions. He further testified that when one of the other officers returned to the car to report that two persons had been shot, "Ratow . . . requested I take him out and shoot him." The officers related that Ratow said that in the old country, referring to Russia, he would be taken out and summarily shot. The officer who sat with Ratow said that, in spite of

repeated admonitions that he need not say anything, Ratow told him that he and his former wife had planned to remarry but that she had been having second thoughts; that he (Ratow) had become jealous of her "boyfriend" and had shot them both; that he had intended to shoot himself but had been prevented from doing so when his pistol was wrested from him; and that his only regret was that he had been unable to kill himself.

Ratow testified at the CrR 101.20W hearing that he had no recollection or memory whatever of talking to the officer in the car. Pursuant to the provisions of CrR 101.20W, Judge Broz, the trial judge, determined as follows:

> The court, however, concludes that the statements made to [the officer] in the patrol vehicle on December 30, 1967, were spontaneous and not in response to any question or interrogation.

The officers and Ratow gave similar testimony before the jury.

Ratow was formally charged by information filed on January 9, 1968. He entered a "Special Plea of Insanity" on January 16, 1968. Shortly thereafter, he was examined by two psychiatrists, one selected by the state and one by Ratow's counsel. After a hearing at which the testimony and written reports from the two psychiatrists were considered, the judge (not the trial judge) entered formal findings of fact that each of the psychiatrists had testified that Ratow was *psychotic at the time of the homicides* and was presently incompetent to stand trial. Pursuant to a formal conclusion that Ratow was incompetent to stand trial, a "Judgment Committing Defendant as Criminally Insane" was entered on January 29, 1968. The judgment includes the following recital significant to Ratow's claimed error:

> Now, THEREFORE, it is hereby
>
> ORDERED, ADJUDGED and DECREED that the said Defendant, PETER A. RATOW, was *mentally ill at the time of the said crimes,* said illness being diagnosed as depressive psychosis; . . .

(Italics ours.)

After a subsequent hearing on October 14, 1969, before the same judge, findings, conclusions, and an order were entered reciting that Ratow "is now able to appreciate his peril and to participate rationally in his own defense . . . " and that Ratow "is now competent to stand trial . . ."

Ratow points out that the purpose of a CrR 101.20W hearing is to determine whether a "confession was voluntary, and, therefore admissible." It is Ratow's position that the judicial determination of January 29, 1968, that he was "mentally ill at the time of the said crimes, . . ." should conclusively demonstrate that his statements to the custodial officer while seated in the police car could not be considered to be "voluntary."

We first observe that the "Judgment Committing Defendant as Criminally Insane" was improper in several respects. The judgment recites that the purpose of the hearing was "to determine the criminal insanity of the Defendant, . . ." and that the court concludes "that the Defendant, PETER A. RATOW, is not safe to be at large and should be committed pursuant to R.C.W. 10.76.040 as criminally insane, . . ."

The purpose of the hearing was *not* to determine the "criminal insanity" of the defendant. RCW 10.76.040, by its terms, applies only to a *jury* verdict of *acquittal* because of "insanity or mental irresponsibility." If a jury finds an accused to be innocent because of insanity, it is required to further find whether or not the accused's "insanity or mental irresponsibility" still exists. A defendant is to be committed as a "criminally insane person" only if the jury finds that his insanity still exists or that he is so liable to a relapse as to be unsafe to be at large. RCW 10.76.040.

Neither the January, 1968 nor the October, 1969 hearing was contemplated by or authorized by RCW 10.76.040.

A hearing to determine competency to stand trial was, however, a necessary and proper exercise of inherent judicial prerogative, sanctioned by the common law. *State v. Mahaffey*, 3 Wn. App. 988, 478 P.2d 787 (1970). The con-

viction of an accused person who is not "competent to stand trial" violates his constitutional right to a fair trial. *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966); *State v. Wilks*, 70 Wn.2d 626, 424 P.2d 663 (1967). Ratow's competency to stand trial was the only proper issue at the January, 1968 hearing. But did (as Ratow asserts) the judge's further, though unauthorized, finding that Ratow was "mentally ill at the time of the . . . crimes, . . ." nevertheless preclude the finding by the trial judge pursuant to the CrR 101.20W hearing that Ratow's statements to the custodial officer were "voluntary" and therefore admissible?

■ Although CrR 101.20W speaks only of "confessions," it is clear that all custodial statements, whether inculpatory or exculpatory, must be voluntary. *State v. Woods*, 3 Wn. App. 691, 477 P.2d 182 (1970). However, "voluntary," when waiver of constitutional immunity from self-incrimination is at issue, means "freely given" as opposed to "coerced." Implicit in the concept of coercion is the assumption that the statement is given in response to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

On the basis of the only evidence available (the testimony of the custodial officer) the trial judge found that Ratow's statements were "spontaneous" and unsolicited. It was also the trial judge's expressed conclusion that because Ratow's statements were voluntary, it was not necessary that it be determined whether his mental condition was such as to preclude him from "understanding his constitutional rights or of making an intelligent waiver of those rights." The judge further concluded however that

> Were it necessary for the court to make such a finding, based on the evidence before the court at the time of the 101.20W hearing, the court would find that the defendant was properly advised of his constitutional rights and did understand his constitutional rights.

■ Because Ratow's immunity from self-incrimination is a basic constitutional privilege, we have reviewed the evidence considered by the trial judge.

[The] finding by the trial court upon appellate review is subject to the following rule this court announced in *State v. Hoffman*, 64 Wn.2d 445, 451, 392 P.2d 237 (1964):

[A]lthough we will and do attach significant weight to findings of fact upon disputed issues arising under Rule 101.20W, *supra*, we cannot blindly and conclusively accept such as indisputably establishing the pertinent facts. It is our duty and obligation, where basic constitutional rights are involved, to carefully review the record brought before us and determine therefrom whether the bounds of due process requirements have been exceeded. *Haynes v. Washington, supra* [373 U.S. 503, 10 L. Ed. 2d 513, 83 Sup. Ct. 1336 (1963)]; *State v. Rutherford*, 63 Wn. (2d) 949, 389 P. (2d) 895.

*State v. Kramer*, 72 Wn.2d 904, 910, 435 P.2d 970 (1967). We concur in the trial judge's finding that Ratow's custodial statements were free from taint of coercive influence.

The fact that Ratow shot and killed the two victims was not at issue. His "sanity" at the time of the homicides was at issue.

■ When the defense is insanity,

". . . *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity." 2 Wigmore on Evidence (3d ed.) 9, § 228, quoted in *State v. Odell* (1951), 38 Wn. (2d) 4, 20, 227 P. (2d) 710.

*State v. Collins*, 50 Wn.2d 740, 759, 314 P.2d 660 (1957).

Washington adheres to the *"M'Naghten's Case,* 10 Clark & F. 200" test of insanity—the ability to distinguish between right and wrong. *State v. White*, 60 Wn.2d 551, 374 P.2d 942 (1962). The jury was so instructed. Each of the experts who testified—three psychiatrists and one psychologist—stated his opinion to be that Ratow was insane by M'Naghten standards at the time of the homicides. Obviously, Ratow's statement to the officer that he intended to kill himself was relevant and material to the issue of "M'Naghten's Case" insanity. The evidentiary weight to be assigned to the evidence was the proper responsibility of the trier of fact—the jury.

■ A claim of mental illness is, however, a factor to be considered in determining the *competency* of the evidence. As we read *State v. Allen*, 67 Wn.2d 238, 406 P.2d 950 (1965), the rule in Washington is that, unless "coerced" by Miranda standards, the admissibility of a statement by an allegedly "insane" accused, challenged as to competency, is to be determined by the trial judge in the exercise of sound judicial discretion.

In *Allen*, competency to "confess" is equated with competency to "testify." If a person has been adjudicated insane, a rebuttable presumption arises that he is incompetent to testify. Where there has been no adjudication, the burden of showing incompetency is upon him who objects on that ground. *State v. Alvis*, 70 Wn.2d 969, 425 P.2d 924 (1967). We find that the trial judge did not abuse his discretion in concluding that the testimony of the arresting officers concerning Ratow's custodial statements was competent and admissible.

The trial judge supplemented his instruction defining "M'Naghten's Case" insanity with an instruction which told the jury that "irresistible impulse" is not insanity and was not a defense under the law. Ratow assigns error, pointing out that he did not assert such a defense. An instruction concerning the legal consequences of an act assertedly compelled by an irresistible impulse was proper in view of the testimony of one of the psychiatrists. Ratow makes no claim that the content or form of the instruction was improper. The claim of error is without merit.

Ratow likewise claims error because the jury was instructed that under the law no condition of mind induced by the voluntary act of the accused may be deemed mental irresponsibility. There was evidence that Ratow had been drinking prior to the homicides. The instruction was proper.

■ ■ Ratow's final claim of error is that the trial judge erred in "allowing the case to go to the jury under the assumption [*sic*] that the defendant was sane." Ratow apparently refers to the instructions which together defined and submitted the defense of insanity. No exceptions were

328

taken at trial and no authority is cited on appeal. The claim of error will not be considered. *State v. Hunter*, 3 Wn. App. 552, 475 P.2d 892 (1970); *State v. Alden*, 73 Wn.2d 360, 438 P.2d 620 (1968).

Affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied April 7, 1971.

Review denied by Supreme Court May 6, 1971.