328 A.2d 507
COMMONWEALTH of Pennsylvania
v.
Landrum Monroe POWELL, Appellant.

Supreme Court of Pennsylvania.
Submitted Sept. 30, 1974.
Decided Nov. 20, 1974.

Fremont J. McKendrick, Ebensburg, for appellant.

Caram J. Abood, Dist. Atty., Ebensburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, Landrum Monroe Powell, was convicted by a jury of murder in the first degree and sentenced to life imprisonment. In this direct appeal,[1] Powell asserts three claims of error. First, he argues that his statements to the police should have been suppressed. Second, he alleges the court abused its discretion in failing to grant his motion for a change of venue. Finally, appellant maintains that his right to compulsory process for obtaining witnesses was denied by the quashing of a subpoena served on a prospective defense witness.

On December 6, 1971, Augustine Thomas Watt, a well-known, 76-year-old resident of Cambria County, was murdered during a burglary of his home. Appellant and Edward Logan became the prime suspects. In March, 1972, appellant was arrested in North Carolina for the murder. He waived extradition.

Three Pennsylvania state policemen and one Cambria County detective were assigned to return Powell to Pennsylvania. On March 7, 1972, the North Carolina police surrendered Powell to the four Pennsylvania officers. Before beginning the automobile trip back to Cambria County, the officers informed Powell of his constitutional rights.[2] They did not question him during the ride. Nevertheless, appellant made several inculpatory statements during the eight-hour trip. In the most incriminating, he told the officers, "I don't know why I got involved, killing an old man like that. I must be crazy, I belong in an institution." Whenever Powell began making a statement, the police urged him to wait until he had consulted counsel.

1. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970 P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974).

2. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant and Logan were charged with Watt's murder. Upon Powell's motion, he was granted a separate trial. Logan was tried first, and was convicted on October 2, 1972, of murder in the first degree. Because Watt's murder had attracted great public interest, the local newspapers, radio and television covered the trial extensively.

During Logan's trial, a prosecution witness, Dr. Fagan, testified that she had accompanied Logan to the victim's home prior to the crime to discuss the purchase of antiques. Although Dr. Fagan was a resident of neighboring Blair County, her appearance at Logan's trial interrupted an extended tour of South America. Realizing that Dr. Fagan would resume her trip when she completed her testimony and desiring that she appear as a defense witness at his trial, Powell served a subpoena upon Dr. Fagan immediately following her testimony.

The witness promptly petitioned the court to quash the subpoena. The court ruled that section 4 of the Uniform Act to Secure Attendance of Witnesses [3] barred the service of a subpoena upon a witness who, like Dr. Fagan, came into the Commonwealth in obedience to a previously issued subpoena. On October 3, 1972, appellant applied to the court for an order to compel the appearance of Dr. Fagan. Two days later the court granted a

3. Act of June 23, 1941, P.L. 147, § 4, 19 P.S. § 622.4 (1964). The Act provides:
 "If a person comes into this State in obedience to a summons directing him to attend and testify in this State he shall not while in the State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons.
 "If a person passes through this State while going to another state in obedience to a summons to attend and testify in that state, or while returning therefrom, he shall not while so passing through this State be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons."

continuance,[4] noting that appellant was free to subpoena the witness when she returned to the jurisdiction. Thereafter, appellant made no further effort to compel the witness to appear at his trial. He neither issued a new subpoena nor moved for another continuance.

Prior to his trial, Powell moved to suppress the statements he had made to the police officers during the trip from North Carolina to Pennsylvania. After a suppression hearing, the court denied the motion. On October 3, 1972, appellant moved for a change of venue, contending that he could not obtain a fair trial in Cambria County due to the publicity that accompanied the murder and Logan's trial. This motion was denied and a continuance granted on October 5, 1972.[5] In December, 1972, Powell was tried and convicted.

■ Powell's first claim is that the court erred in not suppressing his statements to the police. The trial court correctly held that the volunteered statements were admissible. We have previously noted:

"Voluntary statements are admissible because they are the product of choice or conscience rather than compulsion. A volunteered confession has its genesis in the mind of the declarant who speaks with a free will, uninfluenced by any form of official coercion."

*Commonwealth v. Hamilton,* 445 Pa. 292, 296, 285 A.2d 172, 174 (1971); see *Commonwealth v. Yount,* 455 Pa. 303, 310, 314 A.2d 242, 246 (1974).

The court found that Powell's statements were spontaneous and volunteered. It accepted the police officers' testimony that the officers informed Powell of his *Miranda* rights, that they did not question him, and that they actually urged appellant not to speak until he had

4. The trial court granted the continuance because (1) the witness had left the jurisdiction, and (2) Logan's trial the previous week had generated extensive publicity that might have affected the jurors.

5. See note 4 supra.

obtained the advice of counsel. "[I]t is the exclusive province of the trier of facts to pass upon the credibility of witnesses and the weight to be accorded their testimony." *Commonwealth v. Garvin,* 448 Pa. 258, 269, 293 A. 2d 33, 39 (1972). Our review satisfies us that the court's conclusion that Powell's statements were volunteered in the constitutional sense is supported by the record. *Commonwealth v. Yount,* supra, 455 Pa. at 311, 314 A.2d at 246.

■ Appellant contends, however, that throughout the drive back to Pennsylvania, the police were required to inform him of his right to free counsel.[6]

In *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the Supreme Court emphasized that warnings are not required in the absence of police interrogation.

> "[W]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege."

In that opinion the Court also observed:

> "There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statements he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

Id. at 478, 86 S.Ct. at 1630 (footnote omitted).

---

6. The appellant relies on *Commonwealth v. Ritchey,* 431 Pa. 269, 245 A.2d 446 (1968); *Commonwealth v. Dixon,* 432 Pa. 423, 248 A.2d 231 (1968); *Commonwealth v. Jordan,* 451 Pa. 275, 276, 301 A.2d 667, 668 (1973) (Dissenting opinion of Roberts, J.). These cases do not support appellant's contention. In all of them, the defendants, unlike Powell, were subjected to custodial interrogation.

We noted in *Commonwealth v. Yount,* supra, 455 Pa. at 309, 314 A.2d at 245, that the duty to inform a defendant of his constitutional rights is triggered by " ' "police conduct . . . calculated to, expected to, or likely to evoke admissions." ' " (emphasis deleted, omissions in original). See *Commonwealth v. Shea,* 456 Pa. 288, 318 A.2d 713, 715 (1974). Because appellant's volunteered statements were in no sense the product of interrogation initiated by the police, his contention is meritless. *Commonwealth v. Yount,* supra, 455 Pa. at 309, 314 A.2d at 245.

Appellant next argues that the trial court erred by refusing to grant a change of venue. Powell asserts that the extensive news coverage accompanying Watt's brutal slaying and Logan's trial precluded a fair trial by an impartial jury.

■ "Dispositions of motions for a change of venue are within the sound discretion of the trial court." *Commonwealth v. Martinolich,* 456 Pa. 136, 141, 318 A.2d 680, 683 (1974). Our only task is to determine whether the trial court abused its discretion in denying appellant's motion. *Commonwealth v. Swanson,* 432 Pa. 293, 296, 248 A.2d 12, 14 (1968), cert. denied, 394 U.S. 949, 89 S.Ct. 1287, 22 L.Ed.2d 483 (1969). In reviewing the trial court's decision, the " 'only legitimate inquiry in this area was whether . . . the juror had formed a fixed opinion . . . as to the accused's guilt or innocence.' *Commonwealth v. Swanson,* 432 Pa. 293, 300, 248 A.2d 12, 16 (1968)." *Commonwealth v. Hoss,* 445 Pa. 98, 107, 283 A.2d 58, 64 (1971) ; see *Commonwealth v. Yount,* supra, 455 Pa. at 314, 314 A.2d at 248. See also ABA Project on Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.2 (Approved Draft, 1966).

■ Extensive pretrial publicity within a county or district does not necessarily preclude a fair trial in that

community. If the court is satisfied that an objective, open-minded jury can be selected from among the members of the community exposed to the publicity, it need not grant a change of venue. In *Irvin v. Dowd*, 366 U.S. 717, 722–723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961) the Supreme Court of the United States noted:

> "It is not required . . . that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases."

This Court held in *Commonwealth v. Martinolich*, supra, 456 Pa. at 147–148, 318 A.2d at 687 that:

> "The right to a trial by an impartial jury does not preclude from jury service persons who admit to having formed an opinion of a defendant's guilt or innocence but attest to being able to set it aside." (footnote omitted).

 Although there was extensive news coverage of the murder and Logan's trial, the reporting was factual and not inflammatory. Compare *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). It cannot be said on this record that the media's pretrial publicity was of such a nature that appellant's trial in effect took place outside the courtroom. Nor can the publicity be viewed as so pervasive as to reduce Powell's trial to a "hollow formality." Compare *Rideau v. Louisiana*, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963); *Commonwealth v. Pierce*, 451 Pa. 190, 303 A.2d 209 (1973). Furthermore, Powell's trial was one year after the homicide and two months after Logan's trial. In these circumstances there was time for the ef-

fect of these news stories to fade from the minds of prospective jurors. The trial court determined on this record that it was possible to select jurors who had no fixed opinion as to the accused's guilt. *Commonwealth v. Hoss*, 445 Pa. 98, 107, 283 A.2d 58, 64 (1971).

The record clearly reveals the trial court understood its obligation to assure Powell an impartial trial. The court fulfilled its responsibility to probe prospective jurors during voir dire to determine if they were prejudiced against the defendant and to exclude any juror with a fixed opinion of appellant's guilt. The court denied the motion for a change of venue because it was satisfied that Powell could receive a fair trial in Cambria County. We find no abuse of discretion or error of law in the court's refusal to grant the change of venue. See *Commonwealth v. Martinolich*, supra, 456 Pa. at 145, 318 A.2d at 685; *Commonwealth v. Hoss*, supra, 445 Pa. at 108, 283 A.2d at 64; see also ABA Project on Standards for Criminal Justice, Standards Relating to Trial by Jury § 2.4 (Approved Draft, 1968).

Finally, appellant argues that the court, by quashing the subpoena served on Dr. Fagan in September, deprived him of his federal and state right to compulsory process for obtaining witnesses.[7] We need not reach the merits of this claim.

■■ The record is undisputed that at his trial, appellant made no effort or attempt to exercise his right to compulsory process. Appellant neither subpoenaed Dr. Fagan, nor sought or requested the court's aid in obtaining the presence or testimony of the witness. Plainly all such trial requests must be directed in the first instance to the nisi prius court. Cf. *Commonwealth v. Clair*, Pa., 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.*, Pa., 322 A.2d 114 (1974). In the absence of appropriate and timely application for compulsory process, ap-

---

7. U.S.Const. amend. VI; Pa.Const. art. I, § 9, P.S.

pellant is foreclosed on appeal from obtaining relief on the claimed denial of his right to compulsory process. We have repeatedly held that questions not raised at trial will not be heard by this court on appeal. *Martinolich,* supra, 456 Pa. at 160 n. 15, 318 A.2d at 693 n. 15; *Commonwealth v. McFarland,* 452 Pa. 435, 437, 308 A.2d 592, 593 (1973); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972).

Judgment of sentence affirmed.

EAGEN, J., concurs in the result.