The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Francis Barry CONNELLY,
Defendant-Appellee.

No. 84SA270.

Supreme Court of Colorado,
En Banc.

July 8, 1985.

Norman S. Early, Jr., Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Abelardo P. Bernal, Deputy State Public Defender, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People, pursuant to C.A.R. 4.1, challenge a ruling of the district court suppressing inculpatory statements made by the defendant and any evidence that might have been derived from those statements.

The district court ruled that the defendant was suffering from a severe mental disorder which rendered his statements involuntary and that the prosecution had not met its burden of proving an effective waiver of the defendant's *Miranda* rights.[1] We affirm in part, reverse in part, and remand with directions.

## I.

The defendant was charged with the second degree murder[2] of Marry Anne Junta, allegedly committed in Denver, Colorado, between December 1, 1982, and February 1, 1983. Subsequent to the filing of the charge, the court determined that the defendant was incompetent to stand trial. After approximately six months of treatment at the Colorado State Hospital the defendant was certified as competent to proceed, and the case was set for a preliminary hearing in the Denver District Court.

Prior to the preliminary hearing the defendant moved to suppress a confession and evidence obtained as a result of the confession. The basis for the suppression motion was that the defendant was mentally incompetent at the time of his confession, thereby rendering his confession involuntary and precluding a valid waiver of his *Miranda* rights. The defendant requested the court to conduct the suppression hearing in advance of the preliminary hearing. The prosecution made no objection to this procedure, and the district court acquiesced in the defendant's request.

Evidence presented at the suppression hearing established the following facts. On August 18, 1983, while in uniform on an off-duty assignment in downtown Denver, Officer Anderson of the Denver Police Department was approached by the defendant who told him that "he had killed someone" and wanted to tell the officer about it. The officer noted that the defendant's physical appearance was clean and neat, but the

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. § 18–3–103(1)(a), 8 C.R.S. (1978). The defendant was also charged in a second count with a crime of violence in violation of section 16–11–309, 8 C.R.S. (1984 Supp.).

nature of the defendant's statement prompted the officer to ask the defendant whether he had received treatment for any mental disorders. The defendant stated that he had.

After being informed by the officer of his *Miranda* rights and stating that he understood those rights, the defendant elaborated further on his initial statement. He told the officer that he had killed a young girl with whom he had been travelling and that the killing occurred near the area of West Mississippi Avenue in Denver during November or December of 1982. The officer then checked the defendant's driver's license for identification and telephoned the Denver Police Department to determine if they had any information on the killing reported by the defendant.

Detective Antuna then arrived at the scene, having ascertained that an unidentified body of a female had been discovered in west Denver in April 1983. After the detective administered a *Miranda* advisement, the defendant stated that the victim was Marry Anne Junta and that he would be glad to show the officers where the killing occurred. The defendant, Detective Antuna, and another officer then proceeded toward southwest Denver in accordance with directions given by the defendant. The defendant directed the police to a storage structure located near the intersection of Alameda Avenue and Pecos Street and, becoming visibly agitated, indicated that he had stabbed the victim at this location and had covered her body up with a mattress. Both Officer Anderson and Detective Antuna testified that no promise, force, threat, or coercion was directed against the defendant in interrogating him about the details of the crime.

Dr. Jeffrey Metzner, a psychiatrist whom the court had previously appointed to conduct a competency examination of the defendant, was called as a defense witness and testified that the defendant's statements to the police on August 18, 1983, were not voluntary. This opinion was based in part on the following history which the doctor was able to elicit from the defendant during the competency evaluation. In the late afternoon of August 17, 1983, the defendant began to experience the voice of God telling him to go to Denver from Boston in order to confess his crime to the police. The defendant obeyed the voice and purchased an airplane ticket to Denver on that same evening. After arriving in Denver the defendant spent the night looking for the crime scene and was eventually able to locate it with the help of the voice that was speaking to him. The defendant then considered returning home, but God's voice told him he had only two options: he must either confess to the crime or commit suicide. It was at this point that the defendant went to the downtown area of Denver and confessed to the first policeman he was able to find. Dr. Metzner testified that the defendant on August 18, 1983, was suffering from chronic paranoid schizophrenia and that his statements to the police resulted from "command auditory hallucinations," a symptom of his mental disorder. Because, in the doctor's view, persons suffering from such hallucinations feel "as if they have to act on whatever the voice is telling them," the doctor was of the opinion that the defendant was unable to make a free and intelligent decision about whether to speak and confess to the police.

The district court granted the defendant's suppression motion. Although noting that the police had advised the defendant of his *Miranda* rights, that the defendant had stated he understood those rights, and that the police had not acted improperly in speaking to the defendant and recording his statements, the court found that the defendant did not exercise free will in choosing to speak to the police, but rather was "compelled by his illness to do that which he did." The court thus determined that the prosecution had failed to prove by a preponderance of the evidence that the defendant's statements to the police on August 18, 1983, were voluntarily made. The court further concluded that, because the defendant's psychosis compelled him to follow the mandate of God and confess to the crime rather than kill himself, the prosecu-

tion had not carried its burden of proving by clear and convincing evidence that the defendant had voluntarily, knowingly, and intelligently waived his *Miranda* rights. The court accordingly suppressed the defendant's confession and all subsequent statements made by the defendant while in police custody. In addition, the court ruled that any evidence that might have been discovered by the police subsequent to the defendant's statements "would be directly related to the Defendant's statements" and, without determining whether such evidence actually existed or its connection to the defendant's statements, suppressed all such evidence as well.

The People, emphasizing the noncustodial and unsolicited nature of the defendant's first statement to Officer Anderson and the absence of any evidence of police misconduct in the subsequent custodial interrogations of the defendant, argue that the district court erred in suppressing the defendant's initial statement as involuntarily made, also in suppressing his subsequent statements as obtained in violation of the defendant's *Miranda* rights, and finally in suppressing any evidence that might arguably have been derived from those statements. We conclude that the record of the suppression hearing adequately supports the court's determination that the defendant's initial statement to Officer Anderson was not voluntarily made and that his statements subsequent to his arrest were not the result of a valid waiver of his *Miranda* rights. We therefore hold that in the event the defendant is bound over for trial as the result of a preliminary hearing, the defendant's inculpatory statements may not be admitted into evidence at trial. The limited record in this case, however, does not permit us to determine what evidence, if any, might have been derived from the defendant's statements. We accordingly reverse that part of the suppression order relating to the derivative evidence and remand the case to the district court for the purpose of conducting a further hearing in accordance with controlling constitutional principles.

## II.

Before resolving the correctness of the suppression order itself, we consider as a preliminary matter the propriety of the procedure adopted by the district court in hearing and ruling on the defendant's motion to suppress in advance of a preliminary hearing. Although the prosecution did not object to this procedure, we nonetheless believe the matter to be of sufficient importance to address it on our own motion.

The basic purpose of a preliminary hearing is to permit the court to determine whether probable cause exists to believe that the crime charged in the complaint or information was committed by the defendant. *E.g., People v. Taylor*, 655 P.2d 382 (Colo.1982); *People v. Johnson*, 618 P.2d 262 (Colo.1980). A preliminary hearing serves as a screening device which affords the defendant an early opportunity to challenge the filing of criminal charges against him "by forcing the government to present its evidence to an impartial judge for examination." *People v. Quinn*, 183 Colo. 245, 249, 516 P.2d 420, 422 (1973). When probable cause is not established, the court is empowered to dismiss the case at an early stage, thereby avoiding the needless expenditure of judicial resources and relieving the accused of the anxiety and financial burden of a criminal trial. *Holmes v. District Court of Summit County*, 668 P.2d 11 (Colo.1983).

Because of the limited purpose for which a preliminary hearing is intended, we believe that extending the exclusionary rule to this phase of the criminal process would precipitate a vast array of constitutional issues normally reserved for resolution by the trial court and would thus disrupt the expeditious resolution of the probable cause issue. Furthermore, given the rigid time restrictions for setting a preliminary hearing after a request is made,[3] it is quite obvious that both the

---

**3.** Crim.P. 5(a)(4)(I) states in relevant part as follows:

defense and the prosecution would be somewhat hard put to fully litigate suppression issues at this early phase of the criminal process. Requiring suppression motions to be resolved by the court with trial jurisdiction only after probable cause has been determined enhances the orderly processing of cases without in any manner depriving the defendant of a full and fair opportunity to assert issues that relate to the constitutional admissibility of evidence at trial.[4]

▪▪▪ We thus conclude that the district court erred in ruling on the defendant's motion to suppress prior to conducting a preliminary hearing on the charge of second degree murder filed against the defendant. This practice contravenes the intended purpose of a preliminary hearing and results in a wasteful expenditure of judicial resources. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (grand jury witness not permitted to invoke exclusionary rule in refusing to answer questions based on evidence obtained from unlawful search and seizure); *Gannett Pacific Corp. v. Richardson*, 59 Hawaii 224, 580 P.2d 49, 56 (1978) (dictum that "a damaging confession, which may later be suppressed at the trial level on the ground that it was involuntary and illegally obtained by the police, may be admitted at a preliminary hearing"); *People ex rel. Pierce v. Thomas*, 70

Misc.2d 629, 334 N.Y.S.2d 666 (Sup.Ct.1972) (questions concerning the legality of a search and the lawfulness of a confession are not germane to the issue of probable cause at a preliminary hearing). On remand of this case the district court should conduct a preliminary hearing without regard to whether or not the evidence submitted by the prosecution satisfies the standards of constitutional admissibility applicable to a trial on the merits. In ruling on the issue of probable cause, the district court should view the evidence in a light most favorable to the prosecution and should reject only that evidence which is incredible as a matter of law. *E.g., Hunter v. District Court*, 190 Colo. 48, 543 P.2d 1265 (1975).

### III.

Although we disapprove of the practice of resolving a suppression motion prior to a preliminary hearing, we nonetheless elect to address the merits of the People's appeal in the interest of judicial economy. There are two categories of statement encompassed by the court's suppression order: (1) the defendant's initial and noncustodial statement to Officer Anderson that he killed someone and wanted to tell the officer about it; (2) the defendant's custodial statements made to the police after he was taken into custody and advised of his Mi-

---

Within ten days after the defendant is brought before the county court, either the prosecuting attorney or the defendant may file a written motion for a preliminary hearing. Upon the filing of such a motion, the judge forthwith shall set the hearing. The hearing shall be held within thirty days of the day of the setting, unless good cause for continuing the hearing beyond that time be shown to the court.
Crim.P. 7(h)(1), in similar fashion, states that when a direct information is filed in the district court and either the defendant or the prosecuting attorney files a written motion requesting a preliminary hearing, the district judge shall set the hearing within thirty days of the setting, unless good cause for continuing the hearing beyond that period be shown to the court.

**4.** We recognize that there may be unique circumstances which justify a district court's consideration of a motion to dismiss criminal charges prior to a preliminary hearing. In *Peo-*

*ple v. Manning*, 672 P.2d 499 (Colo.1983), for example, both the prosecution and defense, prior to a preliminary hearing, requested the district court to rule on the defendant's motion to dismiss, which was based on an alleged breach of a governmental promise not to prosecute the defendant in exchange for information from the defendant about the whereabouts of her missing child. Given these circumstances, the district court in *Manning* did not abuse its discretion in determining whether the scope of the governmental promise was such as to preclude any and all criminal proceedings, including a preliminary hearing, from taking place against the defendant or, alternatively, whether a lesser sanction such as the suppression of evidence was appropriate. In contrast to the *Manning* case, however, the defendant's motion in the instant matter went only to the suppression of evidence and not to the dismissal of charges.

*randa* rights. We consider each category of statement separately.

## A.

We find no merit in the People's argument that, because the district court found that the defendant's initial statement was not the result of any questioning by the police, the suppression of the defendant's statement as involuntarily made was erroneous. When an issue is raised as to the voluntariness of a statement made by an accused, the burden is on the prosecution to establish by a preponderance of evidence that the statement was voluntary. *E.g., Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982). The ultimate test of voluntariness is whether the statement was the product of a rational intellect and a free will. *E.g., Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Raffaelli,* 647 P.2d 230. If the statement was a product of an essentially rational and free choice by its maker, then it may be used against him at trial; if it was not, the admission of the statement at trial offends due process of law. *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

The issue of voluntariness must be resolved by evaluating the totality of circumstances surrounding the making of the statement. *E.g., Culombe,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, *Raffaelli,* 647 P.2d 230. "Relevant circumstances include the occurrences and events surrounding the confession and the mental condition of the person making the statement." *Raffaelli,* 647 P.2d at 235. The administration of *Miranda* warnings before a statement is made does not insulate the statement "from an inquiry into whether it was voluntarily given." *Id.* Moreover, the absence of police coercion or duress does not foreclose a finding of involuntariness. One's capacity for rational judgment and free choice may be overborne as much by certain forms of severe mental illness as by external pressure. *See Black-*

*burn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

In *Hunter v. People,* 655 P.2d 374 (Colo. 1982), we considered the issue whether the trial court erred in admitting into evidence, without a preliminary determination of voluntariness, a confession made by the defendant to a private individual, a department store security guard, after the guard allegedly told the defendant that he would return his driver's license and allow him to leave if the confession were to be signed. We initially noted that a defendant's due process rights are violated if his conviction is founded in whole or in part upon an involuntary confession, without regard to the sufficiency of the evidence apart from the confession. Addressing the issue of state action, we then stated:

The Due Process Clause of the Fourteenth Amendment, by its very terms, applies only to state action, and on this basis the People argue that because there was no state action, the defendant's due process rights were not violated. *E.g., Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Clearly, no state action is involved in the accused's making an admission of guilt to a private citizen. State action enters the picture, however, when a trial court permits the prosecution at a jury trial to utilize as evidence of guilt a confession which is extracted under circumstances that so overbear the individual's will as to render the statement involuntary, that is, "not the product of a rational intellect and a free will." *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, [9] L.Ed.2d 770 (1963). To avoid the exposure of such a confession to a jury when an accused claims it is involuntary, the trial court must conduct an *in camera* hearing to avoid a violation of the accused's due process rights. Here, the defendant maintained that his signed confession was involuntary and should not be admitted as evidence before a jury. Under the facts of this case, the admission of the signed confession trig-

gered a valid claim that the defendant's due process rights had been violated. 655 P.2d at 375–76.

■■■ The record in this case supports the district court's determination that the defendant's initial statement to Officer Anderson on August 18, 1983, was not voluntary. The testimony of Dr. Metzner established that the defendant on this occasion was suffering from a serious mental disorder which placed him in the dilemma of confessing his crime to the police or committing suicide. Given this state of the evidence, it was within the court's prerogative to rule that the defendant's initial statement to Officer Anderson was not the product of a rational intellect and a free will notwithstanding the fact that this statement was neither solicited by the officer nor was the result of any form of police action.

### B.

■■■ We also reject the People's argument that the district court erred in suppressing the defendant's custodial statements as obtained in violation of his *Miranda* rights. A separate consideration in ruling on a motion to suppress is whether, prior to the onset of custodial interrogation, the defendant has been properly advised of his *Miranda* rights and has validly waived effectuation of those rights. Custodial interrogation conducted in violation of *Miranda* creates a presumption of compulsion. *Oregon v. Elstad*, — U.S. —, —, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985); *New York v. Quarles*, 467 U.S. —, —, 104 S.Ct. 2626, 2631, 81 L.Ed.2d 550 (1984). The prosecution, therefore, bears the burden of proving by clear and convincing evidence that the defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. *People v. Fish*, 660 P.2d 505 (Colo.1983); *People v. Lowe*, 200 Colo. 470, 616 P.2d 118 (1980).

■■■ In light of the psychiatric testimony presented to the district court, we see no reason to disturb the court's conclusion that the prosecution failed to prove by clear and convincing evidence that the defendant effectively waived his *Miranda* rights. The testimony of Dr. Metzner clearly established that the defendant's mental condition on August 18, 1983, was such that he was incapable of making an intelligent and free decision with respect to his constitutional right of silence while in custody and his constitutional right to confer with a lawyer before talking to the police. We therefore affirm the suppression order insofar as it prohibits the prosecution from using at trial the defendant's inculpatory statements made on August 18, 1983.

### IV.

■■■ We last consider whether the district court properly suppressed any and all evidence discovered by the police subsequent to August 18, 1983, as the illegal product of the defendant's inculpatory statements. The derivative evidence rule, which serves to exclude evidence obtained as a result of a violation of the defendant's constitutional rights, applies not only to Fourth Amendment violations but to Fifth and Sixth Amendment violations as well. *Nix v. Williams*, — U.S. —, —, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984). Thus, if an involuntary custodial statement is obtained from a defendant without a valid waiver of *Miranda* rights, evidence subsequently obtained by the police as a result of the constitutional violation may be suppressible as the fruit of the initial illegality. *People v. Lee*, 630 P.2d 583 (Colo. 1981); *People v. Saiz*, 620 P.2d 15 (Colo. 1980); *Lowe*, 200 Colo. 470, 616 P.2d 118. The prosecution in such a case bears the burden of proving that any evidence sought to be admitted was not acquired as the result of the constitutional violation. The prosecution may meet this burden by establishing that the challenged evidence was obtained from a source independent of the illegality, *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that the challenged evidence is sufficiently attenuated from the initial interrogation to permit its admission at trial, *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55

L.Ed.2d 268 (1978), or that the evidence might inevitably have been discovered notwithstanding the constitutional violation, *Williams,* — U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377.

 The record in this case is totally devoid of any evidence establishing either the nature of the derivative evidence suppressed by the court or the nexus, if any, between the defendant's inculpatory statements and the derivative evidence. What we are confronted with, therefore, is a blanket suppression order which is not only unsupported by evidence in the record but is also lacking in basic factual findings necessary for a meaningful appellate review. We therefore reverse the suppression of derivative evidence and remand for further proceedings on this aspect of the case. The district court should apply the principles outlined above in resolving any issues relating to evidence that the defendant claims was obtained as the result of his statements on August 18, 1983.

## V.

Because the district court improperly ruled on the defendant's motion to suppress prior to a preliminary hearing, we remand the case to the district court for a preliminary hearing. In the event the court finds probable cause and orders the defendant bound over for trial, the court need not rehear the defendant's motion to suppress the inculpatory statements of August 18, 1983, as that part of the suppression ruling is affirmed. We reverse, however, that part of the suppression ruling relating to derivative evidence and direct the district court, if probable cause is found, to conduct a further suppression hearing on this aspect of the case in accordance with the views herein expressed.

ERICKSON, J., concurs in part and dissents in part and ROVIRA, J., joins in the concurrence and dissent.

ERICKSON, Justice, concurring in part and dissenting in part:

I concur in the majority's analysis and resolution of the procedural issues in this case. The district court, in my opinion, erred in ruling on the defendant's motion to suppress prior to the preliminary hearing. The majority opinion properly addresses and reviews the scope of admissible evidence at the preliminary hearing. I differ with the majority, however, on the admissibility of the defendant's spontaneous and unsolicited statements to Officer Anderson and dissent to the exclusion of that evidence and evidence derived from that statement.

The record shows that the defendant approached Officer Anderson and volunteered that "he had killed someone," and wanted to tell the police about it. The defendant's initial statement, which he volunteered prior to the *Miranda* warning, was completely spontaneous and was not elicited by police questioning of any kind. In my opinion, that statement, together with the evidence derived from the independent police investigation, is admissible at the defendant's trial. *Nix v. Williams,* — U.S. ——, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

It is axiomatic that a confession is admissible in evidence only if it is voluntarily given. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). To satisfy the test of voluntariness, a confession "must not be extracted by any sort of threats or violence, nor be obtained by any direct or implied promises, however slight." *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *People v. Raffaelli,* 647 P.2d 230, 235 (Colo.1982); *People v. Parada,* 188 Colo. 230, 234, 533 P.2d 1121, 1123 (1975). In my view, a statement can be suppressed as involuntary only if it has been extracted by police questioning or obtained through improper external force. *See* B. George, *Constitutional Limitations on Evidence in Criminal Cases* 259–61 (1973). Statements which a defendant volunteers independent of police questioning or external force should not be subject to suppression under the fifth amendment. *See, e.g., Commonwealth v. Powell,* 459 Pa. 253, 328 A.2d 507 (1974); *Nevels v. State,* 216 So.2d 529

(Miss.1968); *People v. Savage*, 102 Ill. App.2d 477, 242 N.E.2d 446 (1968); *Crummel v. State*, 46 Wis.2d 348, 174 N.W.2d 517 (1970) (the spontaneity of the declarations by defendant corroborates the voluntariness of the statements).

*Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), supports my conclusion that the initial statement should be admitted into evidence. In *Innis*, the defendant was in custody and reacted to a conversation between his two police custodians by volunteering information about the crime under investigation. The defendant's statement to the police was found to be proper because it was not obtained by police interrogation. Here, the defendant was not in custody and spontaneously told Officer Anderson about the crime. The defendant was not questioned until after *Miranda* warnings were given.

The defendant's motivation for confessing in this case was not tied to police questioning or external pressures of any kind. *Compare Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct.

745, 9 L.Ed.2d 770 (1963); *Hunter v. People*, 655 P.2d 374 (Colo.1982).[1] The defendant's statement demonstrated his desire to acknowledge his past crime so that he could purge himself of guilt. The "internal voices" that compelled his confession were part and parcel of his own psychological makeup. The defendant initiated the contact with Officer Anderson and his conduct and statement should be admissible at trial on the issue of his mental condition as well as his guilt.[2] While the defendant's mental condition may be introduced at trial to attack the credibility of his confession or to establish nonresponsibility for the crime committed, the defendant's mental illness should not preclude a finding that his statement was voluntary for purposes of the fifth amendment. *See State v. Boan*, 235 Kan. 800, 686 P.2d 160 (1984); *State v. Wright*, 219 Kan. 808, 549 P.2d 958 (1976); *State v. Ratow*, 4 Wash.App. 321, 481 P.2d 20, *cert. denied*, 404 U.S. 944, 92 s. Ct. 296, 30 L.Ed.2d 259 (1971).

The majority opinion essentially requires police officers to close their eyes and ears when openly approached with evidence that a crime has been committed. I perceive no

**1.** The majority cites *Blackburn* as holding that "[o]ne's capacity for rational judgment and free choice may be overborne as much by certain forms of severe mental illness as by external pressure." At 728. In my opinion, *Blackburn* does not stand for the proposition for which it is cited. In *Blackburn,* the police subjected the defendant, who had a long history of mental illness, to eight hours of sustained interrogation in a small office which was at times filled with police officers. Based on these facts, the Court concluded that Blackburn's confession had not been voluntarily obtained. The defendant's mental illness was but one factor relied on by the Court in reaching its decision. Contrary to the majority's suggestion, *Blackburn* does not hold that mental illness alone can render a statement involuntary for purposes of the fifth amendment.

The majority's reliance on *Hunter v. People* is equally misplaced. In *Hunter,* we suppressed a statement obtained by a security officer who had the defendant's drivers license and refused to release the defendant or return the license until the statement was signed. Given these facts, we held that Hunter's confession had obviously been coerced and could not be used by the prosecution at trial. The facts in this case are quite different. The only pressure was from

within the defendant himself, and that is only demonstrated by the testimony of a psychiatrist who has given his opinion on what the defendant's mental condition was the time he made his statements to the police. The opinion of the psychiatrist was based solely on what the defendant told him. Other psychiatrists might well reach a different conclusion. In any event, the issue of competence and weight to be afforded the initial statement should be resolved at the time of trial.

**2.** The procedure to be followed in cases where sanity is an issue is statutorily prescribed. The defense of insanity in a criminal case must be raised by a special plea. § 16–8–103, 8 C.R.S. (1978). In reviewing a defense in a criminal case predicated on lack of mental capacity two issues are paramount. First, whether the accused is competent to stand trial or proceed. *See* § 16–8–111, 8 C.R.S. (1978); ABA Mental Health Standards, 7–4.1. *See also Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The second issue is whether the accused by reason of his mental condition at the time of the alleged commission of the offense is responsible for his conduct. § 16–8–105, 8 C.R.S. (1978); ABA Mental Health Standards, 7–6.1.

constitutional basis that would compel such a result. In my view, the defendant's initial statement to the police is admissible evidence.

I am authorized to say that ROVIRA, J., joins in this concurrence and dissent.