540 A.2d 543

**COMMONWEALTH of Pennsylvania**

v.

**Charmaine PFENDER, Appellant.**

Superior Court of Pennsylvania.

Submitted October 26, 1987.

Filed April 4, 1988.

104

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before WIEAND, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for murder in the first degree, aggravated assault, unlawful restraint, criminal conspiracy, and violation of the Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101–6120. Appellant contends that the trial court (1) erred in denying her motion to change venue, and (2) abused its discretion when sentencing her on the non-homicide charges. For the reasons that follow, we affirm the judgment of sentence for murder, we vacate the judgment of sentence for the remaining charges, and we remand the case for resentencing on the non-homicide charges.

In August, 1984, appellant was arrested and charged with the above-stated offenses. On March 27, 1985, following a jury trial, appellant was found guilty of all charges. Post-verdict motions were filed and denied. On October 25, 1985, appellant was sentenced to a life term of imprisonment on the murder charge, to be followed by consecutive terms of five-to-ten years for aggravated assault, two-to-four years for unlawful restraint, two-and-one-half-to-five years for criminal conspiracy, and one-to-five years for violation of the Uniform Firearms Act. Appellant filed a motion to modify sentence, which was denied. This appeal followed.

■ Appellant first contends that the trial court erred in denying her motion to change venue.[1] Appellant argues both that (a) she was actually prejudiced by the pre-trial publicity related to her case, and (b) the publicity in the community was so pervasive and inflammatory that we need not find actual prejudice, but should presume that she was prejudiced.

1. The docket reflects that post-verdict motions were not filed until April 18, 1985, or some twenty-two days after the verdict. In its brief filed on appeal, the Commonwealth initially argued that, because appellant's post-verdict motions were untimely filed, her venue argument has not been preserved for appeal. *See* Pa.R.Crim.P. 1123(a) (defendant has right to file post-verdict motions within ten days after finding of guilt).

We note, however, that subsequent to the filing of briefs on appeal, appellant and the Commonwealth entered into a stipulation of record pursuant to Pa.R.A.P. 1926. Counsel stipulated that "[t]he current state of the record fails to reveal either an application for an extension of time to file [post-verdict] motions beyond the ten-day limit or an Order of Court allowing such action." Stipulation of Record, ¶ 5. To correct this error, counsel further stipulated that

6. [ADA] Mr. Conrad and [appellant's counsel] Mr. Brennan agree, as evidenced by their signatures at the end of this Stipulation, that Mr. Brennan orally requested of the Court an extension of time within which to file Post–Trial Motions for Ms. Pfender.

7. Such action was undertaken with the consent and knowledge of Mr. Conrad.

8. The Court of Common Pleas granted the oral application without further order of court.

9. Counsel for Ms. Pfender filed the Post–Trial Motions within the time limits prescribed by the Court.

10. The present Stipulation is intended to rectify this omission from the official record so as to enable the Superior Court of Pennsylvania to review this case based on the merits of the issues presented.

*Id.* ¶¶ 6–10. On November 24, 1987, the trial court entered an order pursuant to Pa.R.A.P. 1926 mandating that "the foregoing Stipulation of Record is to be certified as a part of the official record in this case." Because appellant's extension request occurred within the original ten-day period required by Pa.R.Crim.P. 1123(a), because the trial court granted the extension request, and because it is agreed that appellant's post-verdict motions were filed within the time limits prescribed by the trial court, we hold that appellant has not waived her venue argument. *Compare Commonwealth v. Sheaff,* 365 Pa.Superior Ct. 613, 619, 530 A.2d 480, 483 (1987) (whether defendant can file additional reasons for new trial is matter of discretion with trial

■ The decision whether to grant or deny a motion for a change of venue rests within the sound discretion of the trial court. *See Commonwealth v. Holcomb*, 508 Pa. 425, 442, 498 A.2d 833, 842 (1985) (plurality opinion); *Commonwealth v. Pursell*, 508 Pa. 212, 220, 495 A.2d 183, 187 (1985); *Commonwealth v. Romeri*, 504 Pa. 124, 131, 470 A.2d 498, 501 (1983), *cert. denied*, 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (1984); *Commonwealth v. Casper*, 481 Pa. 143, 150, 392 A.2d 287, 291 (1978). The reason for vesting this decision within the trial court's discretion is that the court "is in the best position to assess the community atmosphere and judge the necessity for a venue change." *Commonwealth v. Pursell, supra*, 508 Pa. at 220–21, 495 A.2d at 187. We may reverse the trial court's denial of a motion to change venue only when there is an abuse of discretion. *Id.*, 508 Pa. at 221, 495 A.2d at 187. Moreover, "[i]n reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of appellant's guilt or innocence as a result of the pretrial publicity." *Commonwealth v. Kichline*, 468 Pa. 265, 274, 361 A.2d 282, 287 (1976).

In *Commonwealth v. Casper, supra*, our Supreme Court noted that claims deriving from alleged prejudicial pre-trial publicity are of two types.

Normally, one who claims that he [or she] has been denied a fair trial because of prejudicial pre-trial publicity must show actual prejudice in the empaneling of the jury.... But this rule is subject to an important exception. In certain cases there "can be pretrial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and actual jury prejudice," ... because the circumstances make it apparent that there is a substantial likelihood that a fair trial cannot be had.

court; to file supplemental motions, permission must be requested and granted on record, and in timely fashion).

481 Pa. at 150–51, 392 A.2d at 291 (citations omitted). *See also Commonwealth v. Holcomb, supra; Commonwealth v. Romeri, supra.*

Here, the voir dire covered some two hundred sixty-eight pages of transcript. During the voir dire, the trial court carefully questioned all prospective jurors regarding their awareness of the case. The court mentioned the name of the victim, and the fact that the victim was a student of Turkish origin. The court then asked each juror whether he or she remembered reading or hearing anything about the case in the news media. *Compare Commonwealth v. Nahodil,* 462 Pa. 301, 307, 341 A.2d 91, 93 (1975). Whenever a prospective juror indicated a familiarity with the case, however vague, the court questioned the juror to determine exactly what he or she remembered about it. The court then asked each juror whether he or she had formed any opinion as to appellant's guilt or innocence. *See, e.g.,* N.T. March 18–19, 1985, at 83, 178, 205–06. *No* juror was seated who indicated that he or she had formed such an opinion. In addition, in response to further questioning by the court, each juror who was later actually seated assured the court that he or she would decide the case based on the evidence, and not on outside media influences. Moreover, defense counsel was given an opportunity to question each juror. Finally, we note that the court made continuing efforts during the trial to ensure that the jury was not exposed to any publicity related to the trial, and to ensure that nothing at trial brought back memories of pre-trial publicity. *See id.* at 1253. On this record, we cannot conclude that the jury empanelled was *actually* prejudiced against appellant as a result of pre-trial publicity.

■ Turning to appellant's *presumptive* prejudice claim, we note preliminarily that the fact of pre-trial publicity alone "does not necessarily preclude a fair trial" in the relevant community. *Commonwealth v. Casper, supra,* 481 Pa. at 152, 392 A.2d at 292 (quoting *Commonwealth v. Powell,* 459 Pa. 253, 260–61, 328 A.2d 507, 510 (1974)). *See also Commonwealth v. Romeri, supra,* 504 Pa. at 132, 470

A.2d at 502. "Instead, once the fact of pre-trial publicity is determined, the inquiry then turns to the nature of the publicity and its effect on the community." *Commonwealth v. Romeri, supra.* In *Commonwealth v. Pursell, supra,* our Supreme Court noted that pre-trial prejudice may be presumed if

(1) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual and objective; (2) the publicity reveals the accused's prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; and (3) the publicity is derived from police and prosecuting officer reports.

[(4)] The publicity must be so extensive, sustained and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated with it.

508 Pa. at 221, 495 A.2d at 187–88 (citation omitted). *See also Commonwealth v. Romeri, supra; Commonwealth v. Bradfield,* 352 Pa. Superior Ct. 466, 481–82, 508 A.2d 568, 576 (1986).

This case was originally highly publicized in the Pittsburgh area. The charges stemmed from the August, 1984 slaying of Engin Aydin, a Turkish graduate student attending Point Park College in Pittsburgh, and the shooting and wounding of Suat Erdogan, another Turkish student. Appellant and a second woman, Sara Mae Richardson, were arrested in connection with the attacks. According to appellant, the media coverage attending this case was inherently prejudicial because

the media portrayed the women as "man-haters" and members of an "anti-male cult". "They were members of an all women softball team before." ... Most importantly, the media reported the fact [that] the chief investigating detective believed it was a case of "pre-meditated murder". He related how the women had attempted to purchase hand gun ammunition on the day of the incident. Such coverage existed on all radio, television, and

newspaper media in Allegheny County. The incident was played as an international incident.

Brief for Appellant at 16.

In the trial court, appellant, in support of her motion to change venue, introduced numerous newspaper articles, transcripts from radio broadcasts, and replays of television broadcasts, all concerning the coverage of the shootings. The trial court, in ruling on appellant's motion, noted that it had the benefit of "replays of all the news media broadcasts from August of 1984 [as well as] radio and newspaper exhibits provided by counsel." Trial Court Opinion at 3. After reviewing this evidence, the court concluded that

> There is no doubt in my mind that there has been and was a great amount of publicity at the time this thing occurred.
>
> What I call to counsel's attention is that almost four months have passed since that deluge, you can describe it, of publicity and also it will be three more months before we attempt to get a jury in this case. It has been my experience as a lawyer and on the bench that the general public's memory of what occurs—with no disrespect to the news media, but what occurs in the news media doesn't last very long. I have sat on cases before where we have had a lot of publicity, and it was astounding when we came to pick the jury how few, if any, people remembered what they had seen or read.
>
> \* \* \* \* \* \*
>
> If it becomes apparent between now and March or during the selection of the jury that it is impossible for us to get an unbiased jury, then proper steps can be taken by this Court to ensure it be done....

N.T. December 13, 1984 at 8–10. *See also* Trial Court Opinion at 3–4. The court then noted that the actual voir dire confirmed its position that the pre-trial publicity was not so extensive and pervasive that its prejudicial effect could not dissipate prior to trial. The court observed that

> An examination of the voir dire of the jury showed that only a small number of prospective jurors were aware of

the incident and even fewer remembered anything that could be characterized as prejudicial. In each instance that a juror had heard and recalled any detailed accounts of the killing or revealed a recollection of any prejudicial information, a challenge for cause was granted to the defense. A review of the transcript revealed that of the thirty-seven jurors interviewed, only seven were dismissed as a result of a challenge for cause [relating to pre-trial publicity]....

Trial Court Opinion at 4.[2]

We have carefully reviewed the voir dire transcript, and we find that the responses of the individual venirepersons fully support the trial court's conclusion that whatever prejudicial pre-trial publicity existed in August, 1984 had dissipated by the time of trial some seven months later. *Compare Commonwealth v. Holcomb, supra; Commonwealth v. Bradfield, supra.* Accordingly, on this record, we cannot say that the August publicity was so sustained or pervasive as to require a change of venue based on a presumptive prejudice theory. *See Commonwealth v. Holcomb, supra.* We thus hold that the trial court did not abuse its discretion in refusing appellant's motion.

 Appellant next contends that the trial court abused its discretion in sentencing her on the non-homicide charges.[3] Appellant notes that the trial court stated that it imposed sentences of incarceration consecutive to appellant's mandatory life sentence because the court erroneous-

2. During the selection of alternates, an eighth juror was dismissed as a result of a challenge for cause related to pre-trial publicity.

3. Appellant also contends that the trial court abused its discretion because it failed to state on the record both (a) the reasons for the sentence imposed and (b) that it had considered the sentencing guidelines. Appellant failed to raise this issue both at sentencing and in her motion to modify sentence. Accordingly, appellant has failed to preserve the issue for appellate review. *See, e.g., Commonwealth v. Richards,* 317 Pa.Superior Ct. 212, 214, 463 A.2d 1161, 1162 (1983) (citations omitted).

We note that appellant has not challenged the constitutionality of the Sentencing Guidelines. Accordingly, she is not entitled to relief under *Commonwealth v. Sessoms,* 516 Pa. 365, 380 n. 2, 532 A.2d 775, 782 n. 2 (1987).

ly believed that appellant otherwise would be eligible for parole within fifteen to twenty years. *See* N.T. Sentencing, October 25, 1985, at 15. Appellant further maintains that the trial court erroneously focused only upon the circumstances of the crime and the seriousness of the offense; appellant argues that the court failed to consider other relevant sentencing factors, such as appellant's remorse, and the fact that she had been subjected to "family abuse".[4] Appellant concludes that both the court's erroneous understanding of the effect of a life sentence, as well as its failure to consider *all* relevant sentencing factors, renders the consecutive sentences it imposed an abuse of discretion.[5] We agree.

4. The Commonwealth notes that appellant characterizes this argument as a claim implicating the sentencing *guidelines.* The Commonwealth then argues that "insofar as appellant's argument can be interpreted as claiming an abuse of discretion on the part of the lower court for failure to consider the sentencing guidelines," *Sessoms* precludes relief. We note, however, that the Commonwealth did not argue the constitutionality of the guidelines in the court below; indeed, the Commonwealth's entire argument consists of a cite to *Sessoms,* which was filed almost two years after appellant was sentenced.

 Moreover, even though appellant characterizes her claim as implicating the guidelines, she presents no argument regarding how the court failed to follow the guidelines. Instead, as we note in the text above, appellant focuses on the court's failure to consider factors other than the seriousness of the offense. We interpret appellant's *argument,* as opposed to her *characterization,* to be based on 42 Pa.C.S.A. § 9721(b), which provides that the court, in selecting among sentencing alternatives, "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense ..., and the rehabilitative needs of the defendant." *Id.* Because we understand appellant's claim to be based on 42 Pa.C.S.A. § 9721(b) and not the guidelines, even if the Commonwealth preserved a *Sessoms*-type claim, we would find it inapposite to appellant's contention.

5. We note that appellant has included, in a separate section of her brief, a "Concise Statement of Reasons Relied Upon for Allowance of Appeal with Respect to the Discretionary Aspects of a Sentence." Brief for Appellant at 13. Appellant's brief thus complies with *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987) and Pa.R. A.P. 2119(f).

 Before we can consider the merits of these claims, however, we must determine whether they present substantial questions for our review. *See* 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Krum,* 367 Pa.Superior Ct. 511, 519, 533 A.2d 134, 138 (1987) (en banc). We note

The imposition of a proper sentence is a matter vested in the sound discretion of the trial court, and a trial court's judgment of sentence will not be disturbed on appeal unless an abuse of discretion is shown. *Commonwealth v. Meo*, 362 Pa.Superior Ct. 328, 332, 524 A.2d 902, 904 (1987); *Commonwealth v. Peters*, 358 Pa.Superior Ct. 94, 96, 516 A.2d 1197, 1198 (1986); *Commonwealth v. Rooney*, 296 Pa.Superior Ct. 288, 292, 442 A.2d 773, 774 (1982). However, "a sentencing court must consider the history, character, and condition of the defendant and not only the nature and circumstances of the crime" in imposing a sentence of total confinement on the defendant. *Commonwealth v. Peters, supra*, 358 Pa.Superior Ct. at 96, 516 A.2d at 1198–99; *Commonwealth v. Arent*, 352 Pa.Superior Ct. 520, 523, 508 A.2d 596, 597 (1986); 42 Pa.C.S.A. § 9725. Additionally, as a general rule, the sentencing court is required by statute to consider the rehabilitative needs of the defendant and the need for the protection of the public, in addition to the gravity of the offense. 42 Pa.C.S.A. § 9721(b). *See also Commonwealth v. Peters, supra*, 358 Pa.Superior Ct. at 96–97, 516 A.2d at 1199; *Commonwealth v. McCall*, 320 Pa.Superior Ct. 473, 480, 467 A.2d 631, 634 (1983). Moreover, "the evidence upon which a sentencing court relies must be accurate. If the court relies on improper considerations or information, the sentence imposed is illegal and new sentencing is required." *Commonwealth v. Cowan*, 275 Pa.Superior Ct. 341, 343, 418 A.2d 753, 753 (1980). *See also Commonwealth v. Gaskin*, 325 Pa.Superior Ct. 349, 353, 472 A.2d 1154, 1156 (1984) (if it appears that

that, if either of appellant's claims proved to have merit, we would be required to remand the case for resentencing. *See, e.g.,* 42 Pa.C.S.A. § 9721(b) (in selecting from sentencing alternatives, court shall follow principle that sentence imposed should call for confinement consistent with protection of public, gravity of offense, and rehabilitative needs of defendant; failure to comply shall be grounds for vacating sentence and resentencing defendant); *Commonwealth v. Krum, supra*, 367 Pa.Superior Ct. at 514, 533 A.2d at 135 (if sentencing court considers improper factors in imposing sentence, court thereby abuses its discretion). Accordingly, we conclude that each allegation presents a substantial question for our review.

trial court relied in whole or in part on impermissible factor, sentence may be rendered invalid). "This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information." *Commonwealth v. Karash*, 306 Pa.Superior Ct. 229, 231, 452 A.2d 528, 528 (1982). Finally, we note that "[a] statement by a sentencing court in its opinion that it considered all of the appropriate factors does not cure its failure to do so during sentencing." *Commonwealth v. Peters, supra*, 358 Pa.Superior Ct. at 97, 516 A.2d at 1199. *See also Commonwealth v. Holler*, 326 Pa.Superior Ct. 304, 308, 473 A.2d 1103, 1106 (1984).

Here, because appellant was found guilty of murder in the first degree, the court was required to impose a life sentence on the homicide charge. *See* 18 Pa.C.S.A. § 1102(a). The issue presented at the sentencing hearing, then, was whether appellant should receive additional sentences on the non-homicide charges, and whether those sentences should run consecutive to the life sentence. A review of the transcript of the sentencing hearing reveals that appellant had no prior criminal record, that she expressed remorse for her acts, and that there had been problems in her home environment, involving abuse and sexual advances made by her father. *See* N.T. October 25, 1985 at 4–5, 7–8, 10–11, 12. After hearing evidence related to the above, as well as argument from the Commonwealth and appellant's counsel, the court then stated the following reasons for the consecutive sentences it was about to impose:

THE COURT: Well, this Court intends to treat the homicide and the aggravated assault as two separate and distinct crimes, and it is obvious from the testimony in this case that was heard by the jury that this is what was thought by them by nature of the verdicts that they reached. This was a cold, calculated killing of an individual with absolutely no rhyme or reason for it, and no necessity for it. The Court is very upset by the circum-

stances of that night, particularly the things that happened thereafter, and the Court can't fail to take that into consideration at the time we are imposing this sentence.

The fact that this man was shot and killed, these two women then tried to bury him, and then chased the other man through the woods, trying to kill him, like a wild animal. The Court can't overlook that.

*If a life sentence in this state was a life sentence, then I would impose that and I'd stop there. But you know and I know that a life sentence in this state is not a life sentence, but that she would become eligible for parole within—what my experience has been—15 to 20 years, they would be thinking of paroling them.*

This was a wanton killing that arouses no signs of mercy from this Court.

*Id.* at 14–15 (emphasis supplied). The court then imposed the mandatory life sentence on the murder charge, and consecutive sentences on the aggravated assault (five-to-ten years), unlawful restraint (two-to-four years), criminal conspiracy (two-and-one-half-to-five years), and violation of the Uniform Firearms Act (one-to-five years) charges. *Id.* at 15–18.

■ Our review of the sentencing hearing leads us to agree with appellant that the trial court abused its discretion in formulating the consecutive sentences. First, despite being made aware of circumstances related to the history, character, and condition of appellant, the court improperly focused entirely upon the nature and circumstances of the offense. *See Commonwealth v. Peters, supra.* Second, and more importantly, it appears from the language emphasized above that the *only* reason offered by the court for ordering that the non-homicide charges be served *consecutively* to the life sentence was the court's belief that appellant would otherwise be eligible for parole in fifteen to twenty years. The court's belief regarding the availability of parole for a person under a sentence of life

imprisonment was clearly erroneous, as the court later recognized in its opinion.[6] *See* 61 Pa.S.A. § 331.21 (Pennsylvania Board of Probation and Parole is authorized "to release on parole any convict confined in any penal institution in this Commonwealth as to whom power to parole is herein granted to said board, *except convicts condemned to death or serving life imprisonment....*") (emphasis supplied). Because the information regarding the availability of parole was inaccurate, and because the court expressly relied upon this inaccurate information in formulating the consecutive sentences, we must conclude that appellant's sentence may have been based on impermissible factors. *See Commonwealth v. Cowan, supra. See also Commonwealth v. Gaskin, supra; Commonwealth v. Karash, supra.* Accordingly, for both reasons stated above, we conclude that the trial court abused its discretion in sentencing appellant on the non-homicide charges; accordingly, appellant's sentence on those charges must be vacated and the case remanded for resentencing. We emphasize that our conclusion regarding appellant's sentence on the non-homicide charges in no way implicates the validity of the mandatory life sentence for murder.

For the foregoing reasons, we affirm the judgment of sentence for murder; we vacate the judgment of sentence for aggravated assault, unlawful restraint, criminal conspiracy, and violation of the Uniform Firearms Act; and we remand the case for resentencing on the non-homicide charges. Jurisdiction is not retained.

Judgment of sentence for murder affirmed. Judgment of sentence for remaining charges vacated and case remanded for resentencing. Jurisdiction is not retained.

6. As we have noted above, statements in the court's opinion cannot cure errors made during the sentencing proceeding itself. *See, e.g., Commonwealth v. Peters, supra.*