J-S26045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICARDO L. NOBLE | : | |
| | : | |
| Appellant | : | No. 204 WDA 2020 |

Appeal from the Judgment of Sentence Entered January 29, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000318-1992

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                     **FILED JULY 21, 2020**

Ricardo L. Noble (Noble) appeals from the judgment of sentence[1]

entered on January 29, 2018, by the Court of Common Pleas of Erie County

(trial court) following resentencing pursuant to ***Miller v. Alabama***, 576 U.S.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] After a previous direct appeal following resentencing, this court remanded Noble's case for the limited purpose of allowing him to file a post-sentence motion preserving his challenges to the discretionary aspects of his sentence. Following remand, Noble filed his post-sentence motion on December 16, 2019, and the Commonwealth filed a response on January 23, 2020.  The trial court denied the motion on January 27, 2020, and Noble filed his appeal from the order denying his post-sentence motion.  Noble's appeal properly lies from the judgment of sentence imposed on January 29, 2018, and we have amended the caption accordingly.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*).

460 (2012) and *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016). After careful review, we affirm.

## I.

We glean the following facts from the certified record and prior decisions of this court. In 1992, Noble was found guilty following a jury trial of second-degree murder, robbery and criminal conspiracy after he and two other individuals robbed and killed a cab driver.[2] *Commonwealth v. Noble*, 1770 Pittsburgh 1992, at *1 (Pa. Super. February 3, 1994) (unpublished memorandum), *allocatur denied*, 647 A.2d 899 (Pa. 1994). Because there was conflicting evidence regarding which of the three defendants actually shot and killed the victim, Noble was convicted of second-degree murder because the killing occurred during the course of a robbery. At the time of the murder, Noble was 15 years old. Noble was sentenced to life in prison without the possibility of parole, as was mandatory at the time, and this court affirmed the judgment of sentence.

By way of background, in *Miller*, the United States Supreme Court held that it is unconstitutional for states to sentence juvenile homicide defendants to mandatory sentences of life imprisonment without the possibility of parole. *See Miller*, *supra* at 465. In *Montgomery*, the Court determined that the *Miller* holding constituted a substantive rule of constitutional law that must

---

[2] 18 Pa.C.S. §§ 2502(b), 3701, 903.

be applied retroactively to cases on collateral review. **See Montgomery**, **supra** at 736. Following the decision in **Montgomery**, Noble filed a Post-Conviction Relief Act (PCRA) petition alleging that his sentence was illegal. The trial court granted relief, vacating his judgment of sentence and scheduling a resentencing hearing in accordance with **Miller** and **Montgomery**.

Prior to the resentencing hearing, counsel filed a sentencing memorandum requesting a sentence of time served or 20 to 60 years' incarceration. The defense argued that the doctor who evaluated Noble in 1992 had opined that he had a strong possibility of rehabilitation with proper counseling and treatment. Noble had struggled in school at the time, in part because he had to care for his siblings due to his mother's alcoholism, but he did not suffer from addiction or mental illness himself. He had one prior juvenile adjudication for terroristic threats following an altercation with his stepfather after Noble witnessed him abusing his mother. The defense argued that Noble became very religious following his incarceration and sought parole so that he could become a productive member of society. The defense reiterated that Noble was not proven to be the shooter and argued that he did not pose a danger to society if released. Finally, the memorandum argued that because there was no constitutional sentencing scheme for second-degree murder at the time of his 1992 sentencing, Noble should be sentenced based on the sentencing statute for the most serious lesser-included offense

of third-degree murder. Based on that statute, Noble would be sentenced to a maximum of 20 years of incarceration or time served. The memorandum requested in the alternative that Noble be sentenced to 20 to 60 years' incarceration, as Noble's co-defendant had been sentenced to 20 to 50 years of incarceration following resentencing.

The Commonwealth filed a sentencing memorandum requesting that the trial court resentence Noble to 50 years to life imprisonment. The Commonwealth asserted that while Noble was convicted of second-degree murder because the homicide occurred during the course of a robbery, it believed Noble was the actual shooter. The Commonwealth's memorandum focused on Noble's prison record, listing his numerous misconducts, mostly for refusal to obey an order, which resulted in his placement in disciplinary custody over the years. He incurred two misconducts for assault during his incarceration, including one in 2014 for an assault on a staff member. Noble also pled guilty in 2005 for Possessing Weapons or Implements for Escape and was sentenced to 1 to 2 years of incarceration. The Commonwealth attached prison records to its memorandum setting forth Noble's misconducts and 2005 criminal conviction in more detail. The Commonwealth argued that a sentence of 50 years to life imprisonment was necessary because Noble remained a threat to the community and had not shown meaningful rehabilitation during his incarceration.

At the beginning of the resentencing hearing, Noble spoke on his own behalf and informed the trial court that he did not agree with counsel's requested 20 to 60 year sentence. Notes of Testimony, 1/29/18, at 2-3. He maintained his innocence of the crimes and asserted that he would only agree to a sentence of time served. The trial court instructed him that if he was dissatisfied with his attorney's performance, Noble could file a PCRA petition raising an ineffective assistance of counsel claim after the resentencing hearing.

The first witness to testify on Noble's behalf was Kaitlyn Dolak, a case manager at GECAC.[3] Dolak explained that she assists individuals who are released from incarceration transition back into the community by helping them find housing, employment, mental health services and drug and alcohol services. The goal of GECAC's services is to assist in reintegrating into the community and provide support services that reduce the risk of recidivism.

Dolak interviewed Noble while he was incarcerated but did not review any of his institutional records. She reported that after an interview, GECAC accepted Noble into the program for intensive case management services, which would include direct services from the program for at least one year. She reported that Noble was cooperative and receptive to services. Since he

_____

[3] While not defined in the record, we understand this to refer to the Greater Erie Community Action Committee. **See** GECAC: Greater Erie Community Action Committee, www.gecac.org, last visited 6/5/20.

was interested in HVAC training, GECAC would assist him finding a training program and providing transportation. Noble had reported that he would live with family if released and Dolak would meet with him at least once a week to provide services.

Noble also presented testimony from Rahnay Ritchie, a friend who had known Noble since middle school. Ritchie described Noble as outgoing and bright and testified that Noble had never gotten into trouble or fights when they knew each other. He believed the robbery and murder was out of character for Noble at the time. Emberly Noble,[4] Noble's sister, also testified that she exchanged letters with Noble throughout his incarceration to give him updates and information on their family. Emberly testified that Noble frequently offered her advice and support for issues in her personal life and was a positive influence on her before and after his incarceration. She testified that he had been a protective older brother before his incarceration.

Shadara Feliciano, Noble's cousin, testified that she also wrote to Noble on a weekly basis during his incarceration. She frequently sought his advice, thought of him as a father figure, and viewed him as a positive influence in her life. Feliciano testified that the family would support Noble if he was released from incarceration and help him transition back into the home. Carlajzah Mendez, Noble's niece, also testified that she views Noble as a father

---

[4] For clarity, we refer to Emberly by her first name.

figure and had sought his advice by writing him letters during his incarceration. She testified that Noble provided her with support and was a positive influence and encouraged her to pursue her education.

Finally, Noble testified on his own behalf. He began by denying all involvement in the robbery and murder. The trial court reminded him that he had been convicted and the hearing was for the purposes of resentencing only. In addition, the trial court stated, "[n]o one is saying today, or at least I'm not, that you are here as the shooter. That has not been proven in court, at least not up to this point." N.T. at 30. The trial court then directed Noble to focus his comments on factors relevant to the resentencing, such as Noble's character, what he had accomplished in prison, and the ways in which he had changed or stayed the same since his conviction. Noble argued that his actions during the crime were a relevant factor in resentencing pursuant to *Miller*, as it directed courts to consider the extent of the defendant's participation in the crime when sentencing juveniles found guilty of murder. Noble then attempted to make legal arguments regarding the proceedings at his decertification hearing in 1992 and the alleged *ex post facto* application of the sentencing statute to his second-degree murder conviction. The trial court repeatedly directed him to speak to his own character and growth and to allow his attorney to make any relevant legal arguments.

Noble testified that despite being incarcerated in an adult prison since he was 16 years old, he has tried to better himself, "not get caught up in a lot

of negativity around [him], and also not become a hardened criminal." N.T. at 36. He earned his GED and a degree in African American History and Science. He testified that he also attempted to educate himself outside of the prison's formal programs. He said that over the years he had attempted to be an advocate for other prisoners who had been mistreated or wronged while incarcerated, and he had written and published work regarding solitary confinement. He acknowledged that he had "some violent altercations" over the years, but said that he was not a violent person and understood that there are better ways to handle problems. He reiterated his innocence for the crimes for which he was convicted and said he had tried over the years to speak up against injustice in the court system. He again argued that he did not belong in an adult prison and that he had been confused by the court system for many years during and after his initial trial proceedings.

The trial court again told Noble that he was convicted of the crimes charged and should not make argument regarding his culpability. The trial court also stated that it did not believe Noble did not understand the trial proceedings and that Noble was an "intelligent young man" who had understood the facts of the case and the witnesses against him. Noble responded that his confusion and frustration at his conviction had led to some of his misconducts and violations while in prison, but that he understood right and wrong and could not excuse his actions. He requested that the trial court disregard his counsel's sentencing recommendation and resentence him to

time served.  Finally, he acknowledged the victim's family, saying "I'm very, very sorry for your loss and your pain and suffering—the pain and suffering, and I hope one day, you acknowledge the facts in this case have proven I'm not the one who killed [the victim], and I'm deeply sorry and remorseful for what happened."  N.T. at 43-44.

The Commonwealth called William Niles, the defense expert who authored a mitigation report.  Niles testified that this case was the first time he had written a mitigation report but he had worked with former prisoners in the past.  He opined in his report that Noble was a credit to his community in prison despite some misconducts and assaults while incarcerated, including an assault on a prison staff member.  Based on interviews with Noble and his family, Niles concluded that he had a low risk of reoffending if released.  He believed Noble was a credit to the community based on letters he wrote advocating on behalf of other inmates.  Niles noted that Noble had maintained employment while incarcerated, though he was suspended from his jobs at times and placed in restricted housing following various violations.

The Commonwealth also presented testimony from Scott Cleaver, the victim's nephew.  Cleaver testified that the victim had suffered polio as a child and had health issues until his death as a result.  The victim's mother died when he was a child and his father was an alcoholic, and the victim developed alcoholism in his adulthood.  After retiring and becoming sober, he began driving a cab because he "enjoyed people."  N.T. at 51.  Cleaver said that his

family had worried about the victim working as a cab driver because he was incapable of protecting himself in the event of a robbery. Cleaver testified that he was "positive" that Noble killed his uncle and requested that the court impose a life sentence. N.T. at 52.

Following the reception of the evidence, the trial court resentenced Noble to 40 years to life imprisonment, as well as court costs and restitution for funeral expenses, for the second-degree murder charge. The trial court acknowledged that there was insufficient evidence to establish that Noble had been the shooter and said that it did not consider Noble to be the shooter when imposing the sentence. The trial court stated that while Noble was a juvenile at the time of the offense, he was of at least average intelligence and did not suffer from any mental illness or disability. The trial court also recognized that Noble had pursued his education and helped others while he was in prison, but he nonetheless had a history of misconducts and one criminal conviction while incarcerated.

After his resentencing hearing, Noble filed a direct appeal raising various challenges to the trial court's evidentiary rulings regarding sentencing, his counsel's effectiveness at resentencing, the transcription of the proceedings, and the discretionary aspects of his sentence. *Noble*, *supra*. Finding that Noble had not been properly informed of his post-sentence rights, this court remanded the case to allow Noble to file a post-sentence motion preserving his challenge to the discretionary aspects of his sentence, but affirmed in all

other respects.  ***Id.*** at *9.  Noble timely filed a post-sentence motion on remand, and the Commonwealth filed a response.  The trial court denied the motion, and Noble timely appealed.  Noble and the trial court have complied with Pa.R.A.P. 1925.

## II.

Noble's first three issues on appeal concern the legality and discretionary aspects of his sentence.[5]  Noble argues that the trial court abused its discretion in sentencing him to 40 years to life imprisonment as the sentence is manifestly excessive, unreasonable and an *ex post facto* imposition of the statute governing sentencing for juveniles convicted of second-degree murder.  He argues that the trial court improperly sentenced him based on considerations of first-degree murder rather than second-degree murder, and that the trial court disregarded his rehabilitative needs in fashioning the sentence.  Finally, he argues that the trial court relied on false information when imposing the sentence.

_____

[5] A challenge to the legality of a sentence presents a pure question of law, over which our standard of review is *de novo* and our scope of review is plenary.  ***Commonwealth v. Lekka***, 210 A.3d 343, 355 (Pa. Super. 2019). We review a challenge to the discretionary aspects of a sentence for an abuse of discretion.  ***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002), *appeal denied*, 573 Pa. 663, 820 A.2d 703 (2003).  "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." ***Id.*** (citations omitted).

**A.**

We first address Noble's challenges to the legality of his sentence. Noble contends that his maximum sentence of life imprisonment violates the *ex post facto* provisions of the state and federal constitutions. He argues that he may only be sentenced to 10 to 20 years imprisonment, as "the only constitutional sentence available at th[e] time of the crime and conviction was for the most serious lesser included offense of third-degree murder." Noble's Brief at 26. He also faults the trial court for failing to consider his individual level of culpability and participation in the crime when fashioning the sentence, a required factor for consideration under **Miller**, and he claims that the trial court erred in sentencing him to pay restitution and costs of prosecution.

Following the decision in **Miller**, our Legislature enacted 18 Pa.C.S. § 1102.1 setting mandatory minimum sentences for juveniles convicted of murder after its effective date of June 24, 2012. In **Commonwealth v. Batts**, our Supreme Court concluded that for juveniles convicted before Section 1102.1's effective date, the sentencing court should be guided by the minimum sentences set forth in Section 1102.1 when resentencing a juvenile offender pursuant to **Miller** and **Montgomery**, though the minimum sentences were not mandatory. **Commonwealth v. Batts**, 163 A.3d 410, 458 (Pa. 2017) ("**Batts II**"). Thus, the minimum sentences set forth in that section are akin to "sentencing guidelines" when a trial court is sentencing a

juvenile convicted of murder prior to the enactment of the statute. ***Commonwealth v. Foust***, 180 A.3d 416, 439 (Pa. Super. 2018).

Here, the trial court complied with our Supreme Court's instruction to consider the minimum sentences set forth in that section as advisory when crafting a minimum term-of-years for a juvenile who committed homicide before the effective date. ***See*** Trial Court Opinion, 4/6/18, at 1-2 (citing to ***Batts II***'s requirement that sentencing courts consider Section 1102.1 factors on resentencing juveniles convicted prior to its enactment). The trial court ultimately concluded that a sentence of 40 years to life imprisonment was warranted. As this sentence was not based on a mandatory *ex post facto* imposition of the sentences proscribed in Section 1102.1 but rather on considering Section 1102.1 as a guideline as required by ***Batts II***, Noble's claim is meritless.

Similarly, ***Batts II*** rejected the claim that a juvenile convicted of first-degree murder prior to June 24, 2012, must be sentenced as if he was convicted of third-degree murder as a lesser-included offense. ***Batts II***, ***supra***, at 457. The Supreme Court held that the prior sentencing statute for juveniles convicted of first- or second-degree murder was unconstitutional in light of ***Miller*** and ***Montgomery***, but that provisions of the sentencing code rendering that statute unconstitutional were severable. Specifically, the statutory subsections prohibiting parole and requiring that a minimum sentence be no more than half the maximum sentence were severable from

the sentencing statute, and the juvenile may constitutionally be resentenced to a minimum term-of-years. *Id.* at 458. The convictions for first- and second-degree murder then remain in place, and the juvenile is not entitled to have his conviction downgraded to the lesser-included offense of third-degree murder. *Id.*; *see also Commonwealth v. Lehman*, 201 A.3d 1279, 1282-83 (Pa. Super. 2019). Noble's contention then that he should be sentenced as if he was convicted of third-degree murder is meritless.

Next, Noble claims that the trial court erred by failing to consider his individual level of culpability and participation in the crime in crafting his sentence, as this was a required factor enunciated in *Miller* for the trial court to address when considering a sentence of life imprisonment without parole. In *Commonwealth v. Lekka*, 210 A.3d 343, 356-57 (Pa. Super. 2019), this court held that failure to consider the factors set forth in *Miller* renders a sentence illegal only when the Commonwealth sought a sentence of life imprisonment without parole at resentencing. Here, the Commonwealth did not seek a sentence of life without parole but instead recommended a sentence of 50 years to life imprisonment. As such, the trial court was not required to consider any specific *Miller* factor making Noble's claim meritless.[6]

---

[6] We note that Noble argues that the trial court failed to consider this factor primarily because the trial court discounted Noble's repeated claims that he was innocent of the murder and robbery. The trial court rightfully instructed Noble that only his sentence was at issue in the hearing, and that he could not attack the validity of his convictions. We do not view the trial court's

- 14 -

Finally, Noble contends that the trial court erred in sentencing him to pay costs of prosecution[7] and restitution of one-third of the victim's funeral expenses. In support of this assertion, Noble merely argues that he is innocent of the murder and robbery and should not be required to pay costs and restitution related to a crime he did not commit. **See** Noble's Brief at 27-30. He argues that he did not knowingly and intelligently agree to pay restitution at his 1992 sentencing hearing. **Id.** We have previously held that trial courts may impose restitution for funeral expenses in murder cases. **See, e.g., Commonwealth v. Yanoff**, 690 A.2d 260, 266-67 (Pa. Super. 1997). Similarly, the trial court is authorized by statute to impose costs of prosecution as a sentence. 16 P.S. § 4403. Noble's bare assertions of innocence do not overcome these authorizations, as he was duly convicted of the crimes following his trial.

---

response to Noble's statements proclaiming his innocence as the trial court failing to consider the extent of Noble's participation in the crime, especially when the trial court was unequivocal that it did not consider Noble to be the shooter. **See** N.T. at 62.

[7] We note that the sentencing order requires Noble to pay costs of prosecution "previously imposed," and does not unconstitutionally require Noble to pay the costs of prosecution associated with his 2018 resentencing hearing. Sentencing Order, 1/29/18; **see Commonwealth v. Lehman**, 201 A.3d 1279, 1286 (Pa. Super. 2019) (holding that defendant could not be sentenced to pay costs of prosecution associated with resentencing following **Miller** and **Montgomery**).

**B.**

We next consider Noble's challenges to the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa. Super. 2018) (citation omitted). An appellant must preserve his claims at the time of sentencing or in a post-sentence motion, file a timely notice of appeal, include a statement of reasons for allowance of appeal pursuant to Rule of Appellate Procedure 2119(f) in his brief, and raise a substantial question for review. Here, Noble has complied with the first three requirements by filing a timely post-sentence motion following the remand from this court, filing a timely notice of appeal and concise statement, and including a statement pursuant to Pa.R.A.P. 2119(f) in his brief. Thus, we turn to whether he has raised a substantial question for our review.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). Noble contends that the trial court imposed a manifestly excessive sentence under the circumstances without considering his rehabilitative needs. This claim presents a substantial question for our review.

*Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075-76 (Pa. Super. 2019) (citations omitted); *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (holding that failure to consider rehabilitative needs and mitigating factors raised a substantial question); 42 Pa.C.S. § 9721(b).

Noble also argues that the trial court sentenced him as if he was convicted of first-degree murder rather than second-degree murder, and that the trial court relied on erroneous information regarding his prison record when imposing its sentence. A claim that the court relied on improper factors in imposing the sentence also raises a substantial question. *Commonwealth v. Leatherby*, 116 A.3d 73, 83 (Pa. Super. 2015). As we conclude that Noble has raised a substantial question for our review, we proceed to the merits of his claims.

## C.

As noted *supra*, when resentencing a juvenile convicted of homicide before Section 1102.1's effective date, the sentencing court should be guided by the minimum sentences set forth in that section. *Batts II*, *supra*. Section 1102.1 requires that a juvenile who is convicted of second-degree murder for an offense committed when he is at least 15 years old be sentenced to a minimum of 30 years' to life imprisonment. 18 Pa.C.S. § 1102.1(c)(1). "Offenders convicted of first-or second-degree murder prior to *Miller* remain subject to mandatory maximum sentences of life imprisonment pursuant to Section 1102." *Lekka*, *supra*, at 356 n.10.

A minimum term-of-years sentence for a juvenile convicted of murder must ensure that the offender is afforded a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Commonwealth v. Olds**, 192 A.3d 1188 (Pa. Super. 2018) (quoting **Graham v. Florida**, 560 U.S. 48, 75 (2010)); **see also Commonwealth v. Foust**, 180 A.3d 416, 431 (Pa. Super. 2018) (holding that a trial court may not impose a minimum term-of-years sentence which constitutes a *de facto* life without parole sentence on a juvenile convicted of homicide unless it finds that the juvenile is incapable of rehabilitation). In addition, when the Commonwealth does not seek a sentence of life without parole for a juvenile offender, the sentencing court should apply the traditional sentencing considerations when resentencing the offender. **Batts II**, *supra*, at 460 (citing 42 Pa.C.S. § 9721(b)).

These standards provide in part that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Pennsylvania's individualized sentencing scheme requires sentencing courts to examine these factors as they relate to the specific defendant and crime before the court. **Commonwealth v. Luketic**, 162 A.3d 1149, 1160 (Pa. Super. 2017). When a sentencing court has ordered and reviewed a pre-sentence investigation report, "we presume that the court was

aware of all relevant sentencing factors." ***Commonwealth v. Knox***, 219 A.3d 186, 199 (Pa. Super. 2019). Moreover, we recognize that the sentencing court, which is present at the hearing and observes all witnesses and the defendant firsthand, "is in a superior position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime." ***Lekka***, ***supra***, at 353.

Here, Noble claims that the trial court abused its discretion by disregarding his mitigating evidence and imposing a manifestly excessive sentence under the circumstances. He also contends that the trial court resentenced him "based on consideration of first-degree murder" rather than second-degree murder, even though there was insufficient evidence at trial to establish that Noble was the shooter. Noble's Brief at 13. The record of the sentencing hearing belies these claims.

The trial court in this case presided over Noble's pre-trial, trial and sentencing proceedings in 1992 and 1993 and was familiar with the history of the case. Prior to the resentencing hearing, the trial court reviewed the pre-sentence investigation report, the mitigation report, letters submitted on behalf of Noble, victim impact statements and the sentencing memorandums from the Commonwealth and the defense. After receiving testimony at the sentencing hearing from character witnesses for Noble, Noble himself, Niles and Scott Cleaver, the trial court made the following findings:

> The Court would note first of all, that he finds there's insufficient evidence now, as there was back then as a matter of law, to

determine that the defendant was, in fact, the shooter, and therefore, he will not be sentenced with that as a factor.

The Court notes that the defendant was 15 at the time of the crime, and as the Supreme Court has said of people his age, there is diminished mental capacity, and lack of culpability, and the Court has considered that as well.

Although the defendant was 15, he was of, at least, average intelligence. He had no— or there was no evidence of any intellectual disability, and he did not suffer from any mental illness as a prior psychological report has indicated that was done at the time.

The defendant indicates he has remorse for what happened, but not for his participation in what happened, and refuses to accept any responsibility for that, even though the verdict indicates otherwise.

The Court has also considered the circumstances of the defendant's childhood, the fact that he obtained a GED, and the fact that he has done some good things in prison to help others. The Court, however, cannot overlook his prison record and his misconducts, transfers and disciplinary problems that he has caused or been involved in in prison, as well as the fact that within the prison system, he was convicted of assault and related offenses in 2014, although not in the legal system. He does have a conviction from 2005, however, for having a weapon or implements, for which he received one to two years.

The Court would note that the impact on the victim in this case cannot be diminished or understated. Obviously, the victim suffered the ultimate consequence. He was killed, and therefore, not only does he have no further life, but his family members did not have [an] opportunity to have a life with him, and by all accounts, he had accomplished a great deal over a number of handicaps, and being a fruitful and good citizen in the community, who was working to serve the community and better himself.

And he was, in fact, helpless based on his physical disabilities, so the killing certainly is considered by the community, to be outrageous and something that no civilized society should tolerate.

N.T. at 62-64. The trial court subsequently imposed the sentence of 40 years to life imprisonment.

Based on these findings, we conclude that the trial court considered all required factors under Section 9721(b) in imposing its sentence, including Noble's rehabilitative needs based on his positive achievements in prison as well as his record of misconducts and other violations. This court may not reweigh the factors under Section 9721(b) if they were properly considered by the sentencing court. ***Commonwealth v. Bricker***, 41 A.3d 872, 876 (Pa. Super. 2012) (stating that "weighing of factors under 42 Pa.C.S. § 9721(b) [is] exclusively for the sentencing court"). While the trial court must consider the minimum sentences set forth in Section 1102.1 when imposing a sentence on a juvenile convicted before its enactment, the court may exercise its discretion to impose a higher sentence if warranted based on its weighing of the 42 Pa.C.S. § 9721(b) factors. ***See Lekka***, ***supra***, at 353 (holding that the trial court's upward departure from the minimum suggested sentence for a juvenile convicted of first-degree murder was not an abuse of discretion when the juvenile acknowledged his guilt, but did not show any true insight into his actions). The sentence renders Noble eligible for parole when he is approximately 56 years old, granting him a meaningful opportunity to live a portion of his life outside of prison. As the trial court here was aware of all relevant factors based on the evidence at the sentencing hearing, the sentencing memoranda, and the presentence investigation report, we

presume it considered all mitigating evidence and find no abuse of discretion. *See Knox*, *supra.*

Noble also contends that his sentence is excessive because one of his co-defendants was resentenced to 20 to 50 years in prison. This argument is meritless in light of Pennsylvania's individualized sentencing scheme. *Luketic*, *supra*, at 1161 (holding that a trial court abuses its discretion in sentencing "by failing to investigate and consider the character of the defendant" or imposing a pre-determined sentence without consideration of evidence at the sentencing hearing). Two co-defendants may be differently situated on any of the factors enumerated in Section 9721(b), and individualized consideration of the evidence at sentencing may lead the court to determine that co-defendants warrant different sentences. As the trial court here considered all of the required factors pursuant to Section 9721(b) in imposing Noble's sentence, it is of no moment that his co-defendant received a lesser sentence.

Next, Noble argues that the information the trial court relied on regarding his misconducts and disciplinary record while incarcerated was inaccurate and that he is entitled to a new sentencing hearing as a result. We have previously held:

> A sentence is invalid if the record discloses that the sentencing court may have relied in whole or in part upon an impermissible consideration. This is so because the court violates the defendant's right to due process if, in deciding upon the sentence, it considers unreliable information, or

> information affecting the court's impartiality, or information that it is otherwise unfair to hold against the defendant.
>
> ***Commonwealth v. Karash***, 452 A.2d 528, 528-29 (Pa. Super. 1982) (citations omitted). Simply put, "the evidence upon which a sentencing court relies must be accurate," ***Commonwealth v. Pfender***, 540 A.2d 543, 548 (Pa. Super. 1988) (quotation and quotation marks omitted), and there must be evidentiary proof of the factor, upon which the court relied. ***See Commonwealth v. P.L.S.***, 894 A.2d 120 (Pa. Super. 2006).

***Commonwealth v. Downing***, 990 A.2d 788, 793 (Pa. Super. 2010).

Noble contends that the documentation that the Commonwealth submitted to the trial court prior to sentencing did not accurately set forth his record of misconducts while in prison, and the trial court abused its discretion in relying on the information set forth in the records. He extensively sets forth his own recollection of events leading to each misconduct, violation and incident leading to his placement in restrictive housing. We find no evidence in the record that the information regarding Noble's prison record was inaccurate. In his counseled sentencing memorandum, Noble acknowledged that he had accrued misconducts during his incarceration, and he did not challenge the validity of the prison records at the resentencing hearing. Noble admitted at sentencing and in his *pro se* post-sentence motion that he earned numerous misconducts and violations during his incarceration and has spent much of his incarceration in restrictive housing as a result. Thus, we conclude that trial court did not abuse its discretion in according weight to Noble's record of misconducts and violations while in prison rather than to Noble's own explanation of the events in his post-sentence motion.

- 23 -

Accordingly, we conclude that the trial court did not abuse its discretion in sentencing Noble to 40 years to life imprisonment.

### III.

Finally, Noble contends that the trial court abused its discretion by failing to replace his court-appointed counsel prior to the resentencing hearing, as he believes that his attorney "only worked against [him] to help prosecution." Noble's Brief at 60. This question is outside the scope of our remand that was limited to allowing Noble to file a post-sentence motion preserving his challenges to the discretionary aspects of his sentence. **Noble**, 420 WDA 2018, at *22. "[W]here a case is remanded to resolve a limited issue, only matters related to the issue on remand may be appealed." **Commonwealth v. Lawson**, 789 A.2d 252, 253 (Pa. Super. 2001). Moreover, as we held previously, any challenges based on ineffective assistance of counsel may not be raised on direct appeal and are properly reserved for a petition pursuant to the PCRA. **Noble**, 420 WDA 2018, at *17 (citing **Commonwealth v. Rivera**, 199 A.3d 365, 372 n.3 (Pa. 2018)). No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2020

- 24 -